Robert K. Stewart, Jr.
Davis Wright Tremaine LLP
701 West 8th Avenue, Suite 800
Anchorage, Alaska 99501
Phone: (907) 257-5300
Fax: (907) 257-5399

Attorneys for Plaintiff Geo-Seis Helicopters, Inc.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

| | | |
|---|---|---|
| GEO-SEIS HELICOPTERS, INC., Plaintiff, vs. THE UNITED STATES, Defendant. | ) | Case No. 07-155 C (Judge Lettow) |

## MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Geo-Seis Helicopters, Inc. ("Geo-Seis") respectfully submits his memorandum in support of its Motion for Temporary Restraining Order.

## I. INTRODUCTION

The United States Navy, Military Sealift Command ("MSC") improperly accepted late filed final proposal revisions from Presidential Airways, Inc. ("Presidential") on March 22, 2006, and again on August 15, 2006, without adequate legal justification. The material facts concerning the late submittal of Presidential's first and second final

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

proposal revisions are undisputed. On neither occasion was there any evidence in the record that Presidential's final proposal revisions were received at MSC's offices and under MSC's control prior to the time set for receipt of offers. Likewise, on neither occasion was there any evidence that the paramount reason for the late delivery of the Presidential proposal revisions was any improper government action on the part of MSC. On each occasion the fault for the late delivery of Presidential's submittals resulted solely from delays associated with Presidential's chosen delivery service.

As required by the federal acquisition regulations and decisions of this court, MSC should have rejected both of Presidential's final proposal revisions as untimely and evaluated Presidential solely on the basis of the initial proposal it submitted on July 13, 2005. Instead, in both cases it issued amendments extending the final proposal revision deadlines, after those deadlines had come and gone, for the sole benefit of Presidential. In neither case did MSC consider, much less even mention, the requirements of FAR § 52.215-1 which was incorporated by reference in the solicitation. Applying the law as discussed below, MSC's actions were improper and Presidential's late filed first and second final proposal revisions should have been rejected and Presidential should have been evaluated, if at all, solely on the basis of the initial proposal it submitted.

## II. STATEMENT OF FACTS

On May 20, 2005, MSC issued Solicitation No. N00033-05-R-1004 ("Solicitation") for Commercial Helicopter Vertical Replenishment Services. Exhibit 1.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

The Solicitation sought up to three two-helicopter detachments, with deployments staged at approximately one year intervals, to provide ship based and shore based vertical replenishment services, including the movement of stores and ammunition, as well as other duties, such as visual search and rescue, passenger transfer, MEDEVAC and internal cargo transfer, in support of naval vessels in the Pacific. Id., Section C 2.0, Attachment J8. Presidential, Geo-Seis and other offerors submitted proposals in response to the Solicitation. Exhibit 11, p. 4.

On March 14, 2006, MSC issued Amendment No. 8 to the Solicitation which established the deadline for final proposal revisions as Wednesday, March 22, 2006, at 2:00 p.m. EST. Exhibit 2. However, as documented in a Memorandum to The File, dated March 22, 2006, Presidential's final proposal revision was not received by MSC by that time and date:

> 3. FPR packages from four out of the five contractors were received in a timely manner.
>
> 4. Presidential Airways, Inc. DBA Blackwater Aviation sent MSC an email dated 22 March 2006 at 12:16 PM stating "FedEx had weather delays in Memphis and the package arrives in DC after the driver was dispatched for the day. FedEx advises that it will be delivered today, just not sure when." The MSC Mailroom received the FPR package from Presidential Airways, Inc. on 22 March 2006 at 2:30 PM.

Exhibit 3.

Subsequently, on August 4, 2006, MSC issued Amendment No. 10 to the

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

Solicitation which established the deadline for the second round of final proposal revisions as Tuesday, August 15, 2006, at 2:00 p.m. EDT. Exhibit 4. However, Presidential apparently learned nothing from its first experience with Federal Express. As documented in the redacted version of the Agency Response to Geo-Seis' Supplemental Protest:

> On August 15, 2006, at 11:49 a.m. the Contracting Officer received an email from Presidential stating that FedEx was experiencing delays, but that Presidential's submission would be delivered by 12:30 p.m. [Record citation omitted]. This was followed by a second email from Presidential received by the Contracting Officer at 1:53 p.m. stating that FedEx claimed it was experiencing weather delays and that FedEx would not guarantee delivery by 2:00 p.m., the closing deadline. [Record citation omitted]. . . . According to MSC records, after release of Amendment 0012, the MSC mailroom informed the Contracting Officer that it had received Presidential's FPR at 2:30 p.m. [Record citation omitted]

Exhibit 5, pp. 3-4.

In each case, MSC improperly accepted the late filed Presidential final proposal revisions and tried to cover its tracks by issuing after the fact solicitation amendments designed to cure Presidential's untimely submittals. On March 22, 2006, at 2:36 p.m. EST, MSC issued Amendment No. 9 which changed the deadline for final proposal revisions to Thursday, March 23, 2006, at 11:00 a.m. EST. Exhibit 6. Amendment No. 9 was issued 36 minutes after the closing time for receipt of proposals and at a point in time when Presidential's first final proposal revision was already late. MSC offered the following justification for the issuance of Amendment No. 9 in its Memorandum to The

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

File, dated March 22, 2006:

> In order to obtain maximum competition for this unique requirement, it is determined that it is in the best interest of the Government to extend the closing date and time for submission of FPR's. This extension will not unduly delay the acquisition.

Exhibit 3.

MSC again tried to cover its tracks by issuing a second after the fact solicitation amendment designed to cure Presidential's second late submittal in August of 2006. On August 15, 2006, at 2:29 p.m. EDT it issued Amendment No. 12 which changed the deadline for final proposal revisions to Tuesday, August 15, 2006, at 4:00 p.m. EDT. Exhibit 7. Amendment No. 12 was issued 29 minutes after the closing time for receipt of proposals and again at a point in time when Presidential's second final proposal revision was already late. MSC offered a similar justification for the issuance of Amendment No. 12 in its Memorandum to The File, dated August 15, 2006:

> This amendment was issued in order to promote greater competition. This amendment was issued in order to allow for the maximum competition among all offerors who remain in the competitive range. Issuing this amendment is in the best interest of the Government.

Exhibit 8.

In neither case did MSC inform the other proposers, including Geo-Seis, that Amendments Nos. 9 and 12 were being issued because Presidential had submitted late proposal revisions. Geo-Seis only first learned of those facts when it received the Contracting Officer's Statement of Facts and the bid protest file documents in the GAO

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

protest it filed on January 3, 2007. Exhibit 11, pp. 7, 9.

## III. LEGAL DISCUSSION

### A. Court of Federal Claims Standards Governing Temporary Restraining Orders.

In deciding whether temporary injunctive relief should issue, this court considers 1) whether the plaintiff is likely to succeed on the merits of the case; 2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; 3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and 4) whether it is in the public interest to grant injunctive relief. Hosp. Klean of Texas, Inc. v. United States, 65 Fed. Cl. 618, 621 (2005) (citing PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004)). No one factor is dispositive, and "the weakness of the showing of one factor may be overborne by the strength of others." Gentex Corp. v. United States, 58 Fed. Cl. 634, 654 (2003) (quoting FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). At the temporary restraining order phase of a bid protest, the record is necessarily truncated because the application must be resolved immediately. Hosp. Klean, 65 Fed. Cl. at 621. The purpose of a temporary restraining order in a post-award bid protest is to stay performance of a challenged contract until the court can determine its validity. Id.

### B. MSC Improperly Accepted Presidential's Late Filed First and Second Final Proposal Revisions.

The justifications offered by MSC for acceptance of Presidential's late filed final

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

proposal revisions and issuance of Amendments Nos. 9 and 12 were legally insufficient. FAR § 52.215-1 was incorporated by reference in the Solicitation. Exhibit 1, Section L 1.0. That regulation provides, in relevant part, as follows:

> (ii)(A) Any proposal, modification, or revision received at the Government office designated in the solicitation after the exact time specified for receipt of offers is "late" and will not be considered unless it is received before award is made, the Contracting Officer determines that accepting the late offer would not unduly delay the acquisition; and—
>
> (1) If it was transmitted through an electronic commerce method authorized by the solicitation, it was received at the initial point of entry to the Government infrastructure not later than 5:00 p.m. one working day prior to the date specified for receipt of proposals; or
>
> (2) There is acceptable evidence to establish that it was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers; or
>
> (3) It is the only proposal received.

FAR § 52.215-1(c)(3)(ii)(A).

The requirement that offerors submit their proposals on time is a "strict rule with very limited exceptions." Argencord Mach. & Equip., Inc. v. United States, 68 Fed. Cl. 167, 173 (2005) (quoting John Cibinic, Jr. & Ralph C. Nash, Jr., Formation of Government Contracts 786 (3d ed. 1998)). See also Hosp. Klean, 65 Fed. Cl. at 621-22 (granting temporary restraining order where there was likelihood that agency had awarded contract to offeror whose proposal was late); Conscoop-Consorzia Fra Cooperative Di Prod. E Lavoro v. United States, 62 Fed. Cl. 219, 236 (2004) (finding that the agency properly rejected plaintiff's price proposal as untimely because it did not fall within any of the enumerated FAR exceptions).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

GAO decisions articulate similarly strict black letter rules governing the rejection of late proposals. An offer is late if it does not arrive at the office designated in the solicitation by the time specified in the solicitation. Sencland CDC Enter., B-252796, B-252797 (July 19, 1993). Where the late receipt results from the failure of an offeror to fulfill its responsibility for ensuring timely delivery to the specified location, the late offer may not be considered. Aztec Dev. Co., B-256905 (July 28, 1994). An offer that arrives late may only be considered if it is shown that the paramount reason for late receipt was improper government action and where consideration of the proposal would not compromise the integrity of the competitive procurement process. Caddell Constr. Co., Inc., B-280405 (Aug. 24, 1998). Improper government action in this context is affirmative action that made it impossible for the offeror to deliver the proposal on time. Id. Mishandling by a proposer's selected delivery service, even when that is the United States Postal Service, does not constitute government mishandling. The Castle Group, B-297853 (March 21, 2006).

Sound policy rationales support strict application of the late submission rules. The late bid rule "may seem harsh, [but] it alleviates confusion, ensures equal treatment of all offerors, and prevents one offeror from obtaining a competitive advantage that may accrue where an offeror is permitted to submit a proposal later than the deadline set for all competitors." Argencord, 68 Fed. Cl. at 173 (quoting PMTech, Inc., B-291082, 2002 CPD ¶ 172 at 2) See also Zebra Techs. Int'l, LLC, B-296135.2, B-296230.2, 2005 CPD ¶

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

120. While the Government may lose the benefit of the special skills and experience of a late submission, "protecting the integrity of the competitive procurement process by ensuring fair and equal treatment among competitors is of greater importance than the possible advantage to be gained by considering a late submission . . . ." Argencord, 68 Fed. Cl. at 173 (quoting Zebra Techs. Int'l. at 2)). See also Inland Serv. Corp., Inc., B-252947, B-252947.4, 93-2 CPD ¶ 266 at 2-3; Phoenix Research Group, Inc., B-240840 (Dec. 21, 1990).

Applying those rules, it is indisputable that Presidential's first and second final proposal revisions were delivered late to MSC. There is no evidence in the record that the paramount reason for the late receipt of Presidential's first and second final proposal revisions on either occasion was any improper government action on the part of MSC. In fact, in each case the late submittals resulted solely from delays associated with Presidential's chosen delivery service. That does not constitute government mishandling.

The justifications offered by MSC for issuance of the two post-hoc amendments by which it attempted to cure Presidential's late deliveries were legally insufficient. The determination that acceptance of a late proposal will not unduly delay an acquisition is a necessary finding under FAR § 52.215-1(c)(3)(ii)(A), but it is not sufficient. Argencord expressly rejects MSC's second proffered rationale, teaching that maximization of competition is subordinate in the hierarchy of governmental interests to protection of the integrity of the procurement process itself "by ensuring fair and equal treatment among

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

competitors." Once Presidential's final proposal revisions were late, MSC was required to address that circumstance in accordance with the applicable regulation and the terms of the Solicitation. At that point in time, it had no authority to ignore Presidential's lateness and provide Presidential the exclusive benefit of preferential amendments which flew in the face of the "fair and equal treatment" mandated by this court's decisions. MSC's actions hint strongly of deception and the type of favoritism the late submission rules were designed to prevent.

Because Presidential's first and second final proposal revisions were delivered late and there was no improper government action, both of its final proposal revisions should have been rejected and Presidential should have been evaluated, if at all, solely on the basis of the initial proposal it submitted on July 13, 2005.[1]

MSC argued before the GAO that its conduct was justified by a line of GAO cases which authorize an agency to extend a proposal submittal deadline and accept a late filed proposal through the issuance of an after the fact amendment extending the deadline where doing so enhances competition. For the reasons discussed below, those cases are readily distinguishable both on the law and the facts and have no application here. In addition, they represent a policy view which is inconsistent with the decisions of this

[1] This assumes Presidential's initial proposal was itself timely. The late filing of Presidential's first and second final proposal revisions and MSC's issuance of brief deadline extensions in those cases raises a substantial questions as to the rationale for issuance of Amendment No. 4 which extended the deadline for submission of initial offers from 2:00 p.m. to 4:00 p.m. on July 14, 2005. Unlike Amendments Nos. 9 and 12, no explanation was contained in the administrative record produced in the prior GAO proceeding for that earlier suspicious extension.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

court and which has been superseded by more recent GAO decisions which, like this court, place primacy upon protecting the integrity of the competitive procurement process and ensuring fair and equal treatment among competitors even at the potential cost of losing the benefit of more advantageous terms included in a late submission.

First, none of the decisions cited by MSC involved the interpretation and application of FAR § 52.215-1(c)(3)(ii)(A) which was expressly incorporated into this Solicitation. That regulation provides in clear, mandatory language that any proposal or proposal revision received "after the exact time specified for receipt of offers is 'late.'" In equally clear and mandatory language, it states that such proposals "will not be considered" unless the criteria specified in the regulation are met. The decisions of this court applying FAR § 15.208(b)(1), which is essentially identical to FAR § 52.215-1(c)(3)(ii)(A), are equally clear and firm in their language. See, e.g., Argencord, 68 Fed. Cl. at 173 ("the only exceptions permitting acceptance of a late bid are found in FAR 15.208(b)(1)"). GAO decisions applying FAR § 52.215-1(c)(3)(ii)(A) are similarly clear. See, e.g., Symetrics Indus., LLC, B-298759 (Oct. 16, 2006) ("a late proposal revision . . . may only be accepted if one of the exceptions contained in FAR sect. 52.215-1(c)(3) is applicable"); Integrated Bus. Solutions, Inc., B-292239 (Comp. Gen. July 9, 2003) (same).

Thus, once Presidential's first and second final proposal revisions failed to arrive at MSC on or before the deadlines established in the Solicitation, then as of those dates

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

and times MSC had no authority to further consider either of Presidential's final proposal revisions unless the requirements of FAR § 52.215-1(c)(3)(ii)(A) were met. Nor could it ignore or evade those requirements by issuing after the fact amendments in an attempt to cure Presidential's defects. The mandatory nature of FAR § 52.215-1(c)(3)(ii)(A) and its incorporation by reference in this Solicitation make any cases, such as those cited by MSC, which do not address and reconcile its provisions readily distinguishable and wholly irrelevant.

Second, the decisions cited by MSC are also readily distinguishable on their facts. ALM, Inc., B-225679 (Feb. 13, 1987), involved a situation where a severe snowstorm impacted the Navy's procurement office operations. ALM does not support the proposition that a post-hoc deadline extension is appropriate where a proposer or its delivery service, as opposed to the government, is experiencing weather delays. Moreover, the principle for which ALM stands is expressly incorporated into the current version of FAR § 52.215-1(c)(3)(iv) (authorizing extensions where an "emergency or unanticipated event interrupts normal Government processes").

Micromass, Inc., B-278869 (March 24, 1998); Ivey Mech. Co., B-272764 (Aug. 23, 1996) and Varicon Int'l, Inc., B-255808 (April 6, 1994) each involved extensions for the receipt of initial proposals, not final proposal revisions, pursuant to which the agency would establish the competitive range. To the extent they remain good law in light of FAR § 52.215-1(c)(3)(ii)(A), which applies to proposals, modifications and revisions,

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

they only stand for the limited proposition that "[a]gencies may extend the closing date for the receipt of initial proposals after the expiration of the original closing date to enhance competition." Micromass, B-278869, 1998 WL 129882 at *4 (citing Ivey Mech.) (emphasis supplied). Their holdings do not provide authority for extending the closing date for the receipt of final proposal revisions after the expiration of the original closing date for the purpose of enhancing competition. In addition, in both Micromass and Ivey Mech. the agency had only received one initial proposal by the submission deadline and, absent the extensions, there would have been no competition whatsoever. Here, MSC received four timely first final proposal revisions and three timely second timely final proposal revisions. Exhibit 11, pp. 7, 9. Extension of the deadlines was not necessary in this procurement in order to insure adequate competition.

Other material facts distinguish those cases. In Fort Biscuit Co., B-247319 (May 12, 1992), the amendment extending the deadline was actually signed prior to the expiration of the initial deadline. That was not the case here. Similarly, in Micromass, the amendment extending the deadline was issued and posted on the CBD/Net website a full day prior to the initial closing deadline. In Varicon Int'l, the proposer whose submittal was at issue had been told by the agency three days in advance of the deadline that its proposal would be considered timely as long as it was postmarked prior to the deadline. Again, no such equitable considerations were present in this case.

Third, there are substantive differences between FAR § 15.410(a), which the GAO

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

relied upon in Fort Biscuit, Ivey Mech. and other decisions, and the current version of FAR § 15.206 that undermine the holding of those decisions. The most contemporaneous version of FAR § 15.410(a) to that under consideration in Fort Biscuit which Geo-Seis could locate through Westlaw or http://www.acqnet.gov reads as follows:

> (a) After issuance of a solicitation, but before the date set for receipt of proposals, it may be necessary to (1) make changes to the solicitation, including, but not limited to, significant changes in quantity, specifications, or delivery schedules, (2) correct defects or ambiguities, or (3) change the closing date for receipt of proposals. Standard Form 30, Amendment of Solicitation/Modification of Contract (53.301-30), shall be used for amending a request for proposals (RFP).

FAR § 15.410(a) (FAC 90-34, October 30, 1995).

In contrast, the relevant provisions of FAR § 15.206 provide as follows:

> (a) When, either before or after receipt of proposals, the Government changes its requirements or terms and conditions, the contracting officer shall amend the solicitation.
> (b) Amendments issued before the established time and date for receipt of proposals shall be issued to all parties receiving the solicitation.
> (c) Amendments issued after the established time and date for receipt of proposals shall be issued to all offerors that have not been eliminated from the competition.

FAR § 15.206(a)-(c).

While it may have been true that FAR § 15.410(a) did not prohibit the issuance of amendments extending the closing date after the closing date has passed, see Fort Biscuit, B-247319, 1992 WL 114377 at *2, FAR § 15.206(c) closed that loophole and permits the issuance of amendments after the deadline for proposal submittals has passed only to

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

"offerors that have not been eliminated from the competition." Thus, prior to issuance of Amendments Nos. 9 and 12 to Presidential, MSC had the obligation to determine, through the application of FAR § 52.215-1(c)(3)(ii)(A), whether Presidential was still eligible for award. Because Presidential's first and second final proposal revisions, including all required acknowledgements of Solicitation amendments, could not have been accepted, see Integrated Bus. Solutions, Inc., B-292239, 2003 WL 21659403 at * 3 (Comp. Gen. July 9, 2003) (initial proposal not viable because it did not contain acknowledgement of amendment changing period of performance which is material term), MSC could not have properly issued Amendments Nos. 9 and 12 to Presidential.[2] Once Presidential's final proposal revisions were late, they could not be revived by subsequent amendments which Presidential never should have received. Argencord, 68 Fed. Cl. at 174. Thus, there are material and dispositive differences between FAR § 15.410(a) and FAR § 15.206 which undermine the continuing precedential value of the Fort Biscuit decision.

Fourth, the balancing of policy interests articulated in the decisions cited by MSC has been superseded by more recent decisions of this court and GAO which place primacy upon protecting the integrity of the competitive procurement process and

---

[2] Amendment No. 7 which changed the deployment dates for Bravo and Charlie detachments was issued on March 3, 2006, and proposers were required to acknowledge that amendment in their first final proposal revisions. Exhibit 9. Amendment No. 11 which changed the deployment dates for Alpha, Bravo and Charlie detachments, as well as the contract performance start date, was issued on August 11, 2006, and proposers were required to acknowledge that amendment in their second final proposal revisions. Exhibit 10. Presidential's initial proposal is not viable because it does not contain acknowledgements of those amendments which changed material terms of the

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

ensuring fair and equal treatment among competitors even at the potential cost of losing the benefit of more advantageous terms included in a late submission.

> While the government may lose the benefit of more advantageous terms included in a late submission, protecting the integrity of the competitive procurement process by ensuring fair and equal treatment among competitors is of greater importance than the possible advantage to be gained by considering a late submission in a single procurement.

Zebra Tech. Int'l, LLC, B-296158 (June 24, 2005) (citing Inland Serv. Corp., Inc.; Phoenix Research Group, Inc., B-240840 (Dec. 21, 1990). Accord Argencord, 68 Fed. Cl. at 173; PMTech, Inc., B-291082 (Oct. 11, 2002). A strict application of FAR § 52.215-1(c)(3)(ii)(A) alleviates confusion, ensures equal treatment of all competitors and prevents one proposer, such as Presidential, from obtaining the unfair competitive advantage that accrues where it, and it alone, is permitted additional time to prepare final proposal revisions for evaluation by the agency. Argencord and Zebra Tech. articulate the current policy balance as between the competing interests and teach that maximization of competition is subordinate in the hierarchy of governmental interests to protection of the integrity of the procurement process itself "by ensuring fair and equal treatment among competitors."

Finally, and most telling, during the course of the rulemaking which lead up to the 1997 revisions to FAR 52.215-1, proposed rules were promulgated which would have permitted agencies to accept late submittals where to do so was in the best interests of the

---

Solicitation.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

government. 61 Fed. Reg. 48380, 48381, 48386, 48392 (Sept. 12, 1996) (proposed versions of FAR 15.207(b) and FAR 52.215-1(c)(3)). However, those proposals were squarely rejected in the final version of the rule. 62 Fed. Reg. 51223, 51259 (Sept. 30, 1997). The commentary makes it clear the intent of the rewrite was "[r]eestablishing the "late is late" rule for receipt of proposals, responses to requests for information, and modifications." Id. at 51224. With minor amendments, 64 Fed. Reg. 51837, 51841 (Sept. 24, 1999), that is the version of the rule in force today. This rulemaking history compels the conclusion that the cases cited by MSC no longer have any precedential value where the propositions for which they stand were rejected in a formal rulemaking process.

C. Geo-Seis Will Suffer Irreparable Harm If A Temporary Restraining Order Is Not Issued Promptly.

When analyzing irreparable injury, "[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction." Magellan Corp. v. United States, 27 Fed. Cl. 446, 447 (1993). See also Overstreet Elec. Co., Inc. v. United States, 47 Fed. Cl. 728, 744 (2000); Bean Dredging Corp. v. United States, 22 Cl. Ct. 519, 524 (1991) (stating that absent injunctive relief, "plaintiffs could recover only bid preparation costs, not lost profits, through an action at law").

Here, absent injunctive relief, Geo-Seis will lose the opportunity to earn the profit it would have made under this contract. Such loss of profit, stemming from a lost

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

opportunity to compete for a contract on a level playing field, has been found sufficient to constitute irreparable harm. Hosp. Klean, 65 Fed. Cl. at 624; United Payors & United Providers Health Servs., Inc. v. United States, 55 Fed. Cl. 323, 333 (2003); MVM, Inc. v. United States, 46 Fed. Cl. 137, 143 (2000).

Geo-Seis will also stand to suffer irreparable injury if a temporary restraining order is not entered promptly. Based upon information and belief, the two Presidential helicopters which will comprise Alpha Detachment were mobilized from Ft. Collins, Colorado to San Diego, California commencing on March 5, 2007, the date the GAO Decision was issued. Affidavit of Ronald Black ("Black Aff."), ¶ 2. It is understood that those two helicopters are currently undergoing necessary maintenance in anticipation of deployment. Id. However, those two helicopters may be scheduled to depart San Diego, California within the next week. Id. Once those helicopters are deployed shipboard for transit to the Pacific, it is probable that MSC and Presidential will argue that the equities weigh against issuance of an appropriate remedy such as termination of the contract. For that reason, it is imperative that this court maintain the status quo in its present posture in order to retain the broadest possible discretion in the issuance of final relief.

Finally, Geo-Seis has been prejudiced by MSC's failure to either disqualify Presidential from consideration under the Solicitation or restrict its evaluation of Presidential to the initial proposal filed by Presidential as required by FAR 52.215-1. As to MSC's improper acceptance of Presidential's late filed first and second final proposal

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

revisions, waiving the deadline for Presidential alone effectively conferred a competitive advantage on Presidential because other proposers were required to meet the constraints of the earlier deadlines. Zebra Tech. Int'l, LLC, B-296158 (June 24, 2005). Waiver of the deadlines for Presidential thus granted it additional time to prepare its final proposal revisions, rendering the basis of competition unequal among proposers. See GROH GmbH, B-291980 (Mar. 26, 2003).

Once a Protective Order is entered in this case, Geo-Seis will further supplement its discussion of prejudice with references from the Source Selection Decision Document which is currently subject to GAO's Protective Order. It will show that if Presidential had been properly disqualified, that Geo-Seis certainly would have had a substantial chance of receiving the award because there was a reasonable possibility that it would have been ranked higher than any of the other remaining proposers.

D. The Balance Of Hardships Strongly Favors Geo-Seis Because There Will Be No Meaningful Harm To MSC Since It Is Presently Resupplying Naval Vessels Using Available Military Assets.

Issuances of a temporary restraining order will result in no meaningful harm to the United States because it has several different options for replenishment of vessels in the Pacific. At the outset, it is important to note that the services being procured through the Solicitation have previously been performed strictly with military assets. The Solicitation in MSC's first venture at privatizing this function.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

Replenishment at sea can take the form of either vertical replenishment, using helicopters, or conventional replenishment, using pulley lines between ships. Black Aff., ¶ 3. Although vertical replenishment is the preferred method of moving cargo between ships, conventional replenishment is still a common practice. Id. The Navy has approximately 1,300 rotor wing aircraft in its inventory, nearly all of which capable of external load missions. Id. Navy vessels also have the option of replenishment ashore, which can be accomplished at any port facility. Id. The bottom line is that a brief delay in the deployment of the two Presidential helicopters which would constitute Alpha Detachment will not disrupt the mission of the Pacific Fleet.

Finally, given that the original performance date under the Solicitation was December 1, 2005, MSC's own delays in conducting this procurement have already impacted the Pacific fleet far more than a brief suspension of performance would.

E. It Will Be In The Public Interest To Grant The Temporary Restraining Order Geo-Seis Has Requested.

There is an overriding public interest in preserving the integrity of the procurement process by requiring the government to follow its procurement regulations. Hosp. Klean, 65 Fed. Cl. at 624; Gentex, 58 Fed. Cl. at 648; Cincom Sys. v. United States, 37 Fed. Cl. 266, 269 (1997) (citing Magellan Corp. v. United States, 27 Fed. Cl. 446, 448 (1993)). Enforcement of FAR 52.215-1 as requested by Geo-Seis through this motion, will clearly advance that public interest.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

## IV. CONCLUSION

For the foregoing reasons, Geo-Seis respectfully submits that its Motion for Temporary Restraining Order should be granted.

Dated this 14th day of March, 2007.

Davis Wright Tremaine LLP
Attorneys for Plaintiff
Geo-Seis Helicopters, Inc.

By: /s/ Robert K. Stewart, Jr.
Robert K. Stewart, Jr.
701 W 8th Avenue, Suite 800
Anchorage, Alaska 99501
Phone: (907) 257-5300
Fax: (907) 257-5399
bobstewart@dwt.com
Alaska Bar No. 8506082

Davis Wright Tremaine LLP
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399

## CERTIFICATE OF FILING

I hereby certify that on March 14, 2007, a copy of the foregoing Memorandum in Support of Motion for Temporary Restraining Order as Same Date as Plaintiff Geo-Seis Helicopters, Inc. was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Robert K. Stewart, Jr.

**Davis Wright Tremaine LLP**
LAW OFFICES
Suite 800 · 701 West 8th Avenue
Anchorage, Alaska 99501
(907) 257-5300 · Fax: (907) 257-5399