SUBJECT: PROTEST OF GEO-SEIS HELICOPTERS, INC.
GAO CASE NO. B-299175
SOLICITATION NO. N00033-05-R-1004

CONTRACTING OFFICER'S STATEMENT OF FACTS

On May 20, 2005, Military Sealift Command issued request for proposals ("RFP") N00033-05-R-1004 for the procurement of three full-time commercial helicopter detachments to perform rotary air logistics (generally referred to as vertical replenishment or "VERTREP" services) in support of MSC's Naval Fleet Auxiliary Force ("NFAF") Program and the U.S. 5th and 7th Fleets. The contractor is required to maintain and operate three ship-based detachments to be deployed over three-years in the Guam area. The helicopters would be used to transport personnel and supplies between vessels at sea.

The contract would consist of a firm period of up to twelve months, one option period of up to twelve months, and four, one-year option periods. The firm period was reserved for aircraft testing and certification, with services to commence upon exercise of the first option period.

Section C8.4 of the RFP required the awardee to maintain approval by the Commercial Airlift Review Board ("CARB"). The CARB ensures that an air carrier is suitable to transport Department of Defense ("DOD") personnel and cargo. Without such approval, an air carrier is prohibited from performing such services for DOD. We rely on this process to help ensure the



Exhibit 11

safety of the VERTREP program. Offerors were not required to have such approval to offer or to receive an award. In accordance with Section F1.2 of the RFP, an awardee had up to twelve months during the firm period to obtain CARB approval.

The RFP contemplated the award of a firm, fixed-price contract to a single awardee on a best value basis. The RFP included four evaluation factors: Technical Quality, Price to the Government, Past Performance, and Socio-Economic Considerations. The factors were in descending order of importance with the non-price factors, when combined, being more important than price. Additionally, the importance of price would increase with the degree of equality of the proposals or when the price was so significantly high as to diminish the value of the technical superiority to the Government.

There were two subfactors under Technical Quality, namely Detachment Specifications and Support Concept and Experience, which were of equal weight. Under Detachment Specifications were two sub-subfactors, namely Airframe Specifications and Mission Capability, of equal weight. Under Support Concept and Experience were six sub-subfactors, namely Maintenance Plan, Logistics Plan, Personnel Plan, Casualty Plan, Quality Plan, and Safety Plan, all of equal weight.

Section L 7.0 provided instructions to offerors on past performance. Offerors were to submit at least three past

performance questionnaires for three, separate contracts or they would be assigned a neutral past performance rating. Additionally, for each contract reference submitted, offerors were required to submit aircraft casualty and personnel fatality information, and were invited to explain the reasons for the casualty or fatality and any steps taken to prevent a reoccurrence.

The RFP also contained a provision for a Cascading Small Business Set-Aside. The RFP informed offerors that in the event MSC received offers from two or more qualified small businesses, the procurement would be converted to a total set-aside for small businesses.

Proposals were due July 11, 2005.

On June 9, 2005, I issued Amendment 0001 to the RFP to answer questions from industry regarding the RFP.

On June 30, 2005, I issued Amendment 0002, which extended the closing date until July 14, 2005. I did this because, as stated in the amendment, there were still pending questions from industry and I wanted to ensure that there was sufficient time for offerors to prepare proposals once the questions had been answered.

On July 8, 2005, I issued Amendment 0003 to provide answers to the pending questions from industry and to make minor changes to the RFP.

On July 14, 2005, I issued Amendment 0004 to extend the closing time on July 14th from 2:00 p.m. to 4:00 p.m.

MSC received six timely offers from:

[redacted]
Geo-Seis Helicopters, Inc. (Geo-Seis)
Presidential Airways Inc. (Presidential)
[redacted]

The Source Selection Evaluation Board ("SSEB"), consisting of Commander Tom Poff (Technical Chairman), U.S. Navy; Captain Frederic Flight, U.S. Navy; and Lieutenant Commander Craig Huffnagle, U.S, Navy, all experienced military helicopter pilots, and Mr. Jim Castillo, an experienced pilot with the Department of the Interior, performed the technical evaluation of each offer during the periods July 25-29 and August 25-26, 2005. All offers, including Geo-Seis (which had previously performed essentially the same VERTREP services under contract for MSC from October 1999 to November 2004), were found to be [redacted]. The technical evaluation is included in the Pre-negotiation Business Clearance Memorandum as Attachment 6.

Price and past performance initially were evaluated by Mr. Michael Vicory. Mr. Vicory noted the accident history of each offeror on his evaluation checklists, including those of Geo-Seis and Presidential. The Past Performance evaluation is


SUITABLE FOR PUBLIC RELEASE

included in the Pre-negotiation Business Clearance Memorandum as Attachment 7.

[redacted] was the only large business offer and the remaining offers were all determined to have been submitted by qualified small businesses. Therefore, it was determined that in accordance with the RFP, the procurement would be set-aside for small businesses. Accordingly, all offers with the exception of [redacted] were placed in the competitive range. The competitive range determination is included in the Pre-negotiation Business Clearance Memorandum as Attachment 9.

On October 27, 2005, I issued Amendment 0005 setting aside the procurement for small businesses. Because of the set-aside, the socio-economic factor was dropped from consideration because, in accordance with the RFP, that factor applied only to large businesses.

After a Contract Review Board and approval of the Pre-negotiation Business Clearance Memorandum on October 26, 2005, I held discussions with all offers beginning on November 3, 2005, having previously sent written discussion items to each offeror on October 28, 2005. The offerors were invited to respond to the discussion items, which all did by early December 2005.

In mid-December, Mr. David Martyn replaced Mr. Barron Nelson as NFAF Program Manager. Therefore, Mr. Martyn also replaced Mr.

Nelson as SSA (Mr. Nelson was the original SSA for the procurement).

The December responses to the discussion items raised additional issues. Therefore, a second round of discussions was held with all offerors on February 1, 2006, with each offeror having been sent a written list of discussion questions on January 27, 2006.

On February 10, 2006, I issued Amendment 0006 to inform offerors of the availability of flight deck drawings.

In March 2006 Mr. Brian Kimm replaced Mr. Vicory as the price and past performance evaluator.

On March 3, 2006, I issued Amendment 0007, which made various changes to the RFP. Among them was to add an instruction to offerors under Section L regarding the contents of the Quality Assurance Plan (one of the evaluation factors included in Section M) and to add an additional technical sub-subfactor under Support Concept and Experience. This new factor contemplated the evaluation of an offeror's possession of CARB approval for rotary-wing aircraft operations or its plan to obtain such approval within six months of award. This factor was to be considered equally with the remaining sub-subfactors. The addition of this factor did not alter the basic requirement in Section C of the RFP that an awardee obtain CARB approval within twelve months of award. Instead it gave evaluation



SUITABLE FOR PUBLIC RELEASE

credit for an offeror proposing to obtain the approval within six months or less.

On March 14, 2006, I issued Amendment 0008, which changed the instructions for proposal length, closed discussions and established March 22, 2006, at 2:00 p.m. as the date and time for receipt of final proposal revisions ("FPR").

On March 22, 2006, I issued Amendment 0009, which changed the date and time for receipt of FPRs to March 23, 2006, at 11:00 a.m. Presidential had experienced weather delays with FedEx, so the closing date was extended to permit it to submit a timely FPR. Doing so did not unduly delay the procurement and maximized competition.

Technical evaluation of the FPRs was conducted on April 3-7, 10-14 April, and 20 July 2006. By this time, Mr. Castillo was no longer available and did not participate in the evaluation. The results of the evaluation were documented in a Technical Evaluation Report for Final Proposals. Reports for price and past performance were not prepared at this time.

After receipt of FPRs I contacted Air Mobility Command ("AMC"), which was my point of contact with the U.S. Air Force with regard to CARB matters, with a list of three likely awardees to discuss any difficulties that the offerors would face in receiving CARB approval. At that time, neither [redacted] nor [redacted] were likely to receive award, so I discussed neither



SUITABLE FOR PUBLIC RELEASE

with AMC. After my discussions with AMC, I determined it was necessary to reopen discussions. Therefore, I reopened discussions with all offerors on May 3, 2006, to address the CARB certification issues and any other outstanding issues based on the offerors' FPRs. Again, before discussions, I sent written discussion items to each.

I received responses to all discussion items by May 11, 2006.

During this time an additional technical evaluation of the offers was conducted to ensure that all outstanding technical issues had been addressed. The results of that evaluation were included in an addendum to the Technical Evaluation Report for Final Proposals.

Since discussions were still open, I held a final round of discussions on August 4, 2006. I sent each offeror a list of the evaluation factors for which they had not received the highest rating. I did this to ensure that I had covered all grounds and that discussions would be adequate.

On August 4, 2006, I issued Amendment 0010, which made a minor change to RFP, closed discussions effective August 10, 2006, and established August 15, 2006, at 2:00 p.m. as the date and time for receipt of the second round of FPRs.

On August 4, 2006, [redacted] withdrew from the competition.

On August 10, 2006, I informed all offerors by email that discussions would remain open until August 11, 2006.

On August 11, 2006, I issued Amendment 0011, which revised the performance periods. Because of the time the procurement had taken, the original performance dates were no longer viable.

On August 15, 2006, I issued Amendment 0012, the final amendment to the RFP, which extended the closing time to 4:00 p.m. on August 15, 2006. Presidential was experiencing delays with FedEx. Therefore, the closing date was extended to permit it to submit a timely FPR. Again, doing so did not unduly delay the procurement and maximized competition.

After receipt of final FPRs, four offerors remained eligible for award. All were reviewed by the technical evaluation committee. By this time Commander Poff had retired and was no longer available. Mr. Castillo remained unavailable. Therefore, Captain Flight and Lieutenant Commander Huffnagle comprised the SSEB, with Captain Flight as the Technical Chairman.

The Source Selection Authority ("SSA") was briefed in September 2006, regarding the evaluations. Subsequently, the SSA determined that an award to Presidential represented the best value to the Government. His decision is documented in the Source Selection Decision ("SSD"). This decision was reviewed by MSC's Contract Review Board on September 25, 2006, and, as documented in the Post-negotiation Business Clearance Memorandum of that date, approval was given to award Presidential a contract.

On October 4, 2006, I sent all offerors the preaward notice required by FAR 15.503. On October 6-7, 2006, Geo-Seis and two other eligible offerors protested Presidential's small business representation. On November 2, 2006, the SBA determined that Presidential was a small business. Based on that determination, MSC awarded Presidential Contract No. N00033-07-C-1004 that same day.

On November 6, 2006, Geo-Seis requested a debriefing. In response, on November 9, 2006, I scheduled a debriefing for November 14, 2006, but Geo-Seis declined that date and proposed November 16 or 17, 2006. On November 13, 2006, I responded that the next available dates were November 15, 21 or 22, 2006, and tentatively scheduled a debriefing for November 21, which Geo-Seis accepted. The debriefing was held on November 21, 2006. Geo-Seis' protest followed.

On December 15, 2006, the CARB issued Presidential the necessary approval to perform rotary-wing aircraft services as required under the contract. This was well within the six months it had proposed in its offer.

__________________________

Cathlene Jo Stangler
Contracting Officer



SUITABLE FOR PUBLIC RELEASE