# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## Bid Protest

| | | |
|---|---|---|
| GEO-SEIS HELICOPTERS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES | ) | Civil Action No. 07-155 |
| Defendant, | ) | (Judge Lettow) |
| and | ) | |
| PRESIDENTIAL AIRWAYS, INC., | ) | |
| Defendant-Intervenor. | ) | |

**PRESIDENTIAL AIRWAYS, INC. OPPOSITION TO THE APPLICATION OF GEO-SEIS HELICOPTERS, INC. FOR A TEMPORARY RESTRAINING ORDER**

David Hammond
(Counsel of Record)
John E. McCarthy Jr.
Adelicia Cliffe Taylor

Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500
Fax: (202) 628-5116

March 16, 2007

# TABLE OF CONTENTS


**Page**

STATEMENT OF FACTS ........ 2

ARGUMENT ........ 5

I. Plaintiff Is Not Entitled to an Injunction Because It Has Waited Too Long Before Filing ........ 6

II. It Is Unlikely that Geo-Seis Will Prevail on the Merits ........ 7

A. MSC Properly Accepted Presidential's Timely Filed First and Second Proposal Revisions ........ 7

III. Geo-Seis Will Not Be Irreparably Harmed If a TRO Does Not Issue ........ 13

IV. The Certain Injury the Government and Presidential Outweighs Any Injury to the Plaintiff ........ 14

V. A TRO Is Not In the Public Interest ........ 17

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Page**

### CASES

*Aerolease Long Beach v. United States*, 31 Fed. Cl. 342 (1994), *aff'd*, 39 F.3d 1198 (Fed. Cir. 1994) (unpubl.) ........ 13

*Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167 (2005) ........ 12

*Bannum, Inc. v. United States*, 60 Fed. Cl. 718 (2004) ........ 13

*Cerebonics, Inc. v. Garrett*, No. 91-0239, 1991 WL 45738, at *2649 (D.D.C. Mar. 20, 1991) ........ 15, 16

*Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 266 (1997) ........ 5

*Conscoop-Consorzia Fra Cooperative Di Prod. E Lavoro v. United States*, 62 Fed. Cl. 219 (2004) ........ 13

*FMC Corp. v. United States*, 3 F.3d 424 (Fed. Cir. 1993) ........ 6

*Fort Biscuit Co.*, B-247,319, May 12, 1992, 92-1 CPD ¶ 440 ........ 8

*Hospital Klean of Texas, Inc. v. United States*, 65 Fed.Cl. 618 (2005) ........ 12

*Inst. for Advanced Safety Studies – Request for Reconsideration*, B-221,330, B-221,330.2, July 25, 1986, 86-2 CPD ¶ 110 ........ 8

*Ivey Mechanical Co.*, B-272,764, Aug. 23, 1996, 96-2 CPD ¶ 83 ........ 8

*La Gloria Oil and Gas Co. v. United States*, 72 Fed. Cl. 544 (2006) ........ 8

*Labat-Anderson, Inc. v. United States*, 50 Fed. Cl. 99 (2001) ........ 15, 17

*Lametti & Sons, Inc. v. City of Davenport*, 432 F.Supp. 713 (S.D. Iowa 1977) ........ 17

*Nat'l Football League Props., Inc. v. Coniglio*, 554 F.Supp. 1224 (D.D.C.1983) ........ 5

*Presidential Gardens, Assoc.v. United States*, 175 F.3d 132 (2d Cir. 1999) ........ 14

*Sierra Military Health Srvcs., Inc. v. United States*, 58 Fed. Cl. 573 (2003) ........ 15

*Software Testing Solutions, Inc. v. United States*, 58 Fed. Cl. 533 (2003) ........ 7, 14

*United Int'l Investigative Servs., Inc. v. United States*, 42 Fed. Cl. 73 (1998) ........ 6

*Varicon Int'l, Inc.; MVM, Inc.*, B-255,808, B-255,808.2, Apr. 6, 1994, 94-1 CPD ¶ 240 ........ 8

*W & D Ships Deck Works, Inc. v. U.S.*, 39 Fed. Cl. 638, 647 (1997) (*citing Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir.1983)) ........ 5

**REGULATIONS**

61 Fed. Reg. 48386 (Sep. 12, 1996) ........ 12

62 Fed. Reg. 51224 (Sept. 30, 1997) ........ 10

62 Fed. Reg. 51225 (Sep. 30, 1997) ........ 12

FAR § 52.215-1(c)(3)(ii)(A) ........ 11

FAR § 15.206 ........ 11

FAR § 15.206(b)(c) ........ 10, 11

FAR § 52.215.1 ........ 10

FAR § 52.215-1 ........ 11, 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Bid Protest

| | | |
|---|---|---|
| GEO-SEIS HELICOPTERS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES | ) | Civil Action No. 07-155 |
| Defendant, | ) | (Judge Lettow) |
| and | ) | |
| PRESIDENTIAL AIRWAYS, INC., | ) | |
| Defendant-Intervenor. | ) | |

**PRESIDENTIAL AIRWAYS, INC. OPPOSITION TO THE APPLICATION OF GEO-SEIS HELICOPTERS, INC. FOR A TEMPORARY RESTRAINING ORDER**

Presidential Airways, Inc. ("Presidential") hereby opposes the application of Geo-Seis Helicopters, Inc. ("Geo-Seis") for a temporary restraining order enjoining Presidential's performance under its contract with the United States Navy, Military Sealift Command ("MSC") under which Presidential has been performing since November, 2006. This Court should deny this motion because (1) Geo-Seis is unlikely to prevail on the merits; (2) it is too late for an injunction because the event Geo-Seis seeks to enjoin has already incurred; (3) the harm to Presidential and/or the Air Force in terms of additional incurred costs for outweighs any injury to Geo-

Seis; (4) Geo-Seis has slept on its right to enjoin Presidential's performance by failing to seek an injunction immediately after contract award.

## STATEMENT OF FACTS

The award of Solicitation No. N00033-05-R-1004 ("Solicitation") to Presidential for Commercial Helicopter Vertical Replenishment Services has been unsuccessfully challenged by the Plaintiff at the Small Business Administration ("SBA") Area III Office, the SBA Office of Hearings and Appeals ("OHA"),[1] and the Government Accountability Office ("GAO"). The SBA Area Office and the OHA rejected each of the small business allegations raised by the Plaintiff in its Complaint before this Court and the GAO specifically found the rest of the arguments raised by the Plaintiff before this Court to be without merit.

On May 20, 2005, MSC issued the Solicitation for commercial helicopter vertical replenishment services. Solicitation (Exhibit 1 to Geo-Seis Motion for TRO). Thereafter MSC issued a number of solicitation amendments. Of particular note to this litigation, on March 22, 2006, at 2:36 p.m. EST, MSC issued Amendment 0009, extending the deadline for proposal revisions from March 22, 2006, 2:00 p.m. EST to March 23, 2006 at 11:00 a.m. EST. Amendment 0009 (Exhibit 1). Geo-Seis understands that MSC extended the deadline in order to obtain maximum competition. Memorandum in Support of Motion for Temporary Restraining Order ("Geo-Seis TRO Memo") at p. 5. Presidential's proposal revision

---

1 *See* OHA Order Dismissing Appeal (Exhibit 2 to Presidential Motion to Dismiss); *see also* OHA Decision on Reconsideration (Exhibit 3 to Presidential Motion to Dismiss).

was received by the agency on March 22, 2006 at 2:30 p.m., more than 20 hours before the deadline. *Id.* at 3. On August 15, 2006, at 2:29 p.m. EST, MSC issued Amendment 0012, which extended the deadline for another round of proposal revisions from August 15, 2006, 2:00 p.m. to August 15, 2006, at 4:00 p.m. EST. Amendment 0012 (Exhibit 2). Geo-Seis understand that this amendment was also issued in order to promote maximum competition. Geo-Seis TRO Motion at p. 5. Presidential's revised proposal was received by the agency at 2:30 p.m. on August 15, one hour and thirty minutes before the deadline. *Id.* at 4.

On October 4, 2006, MSC issued a notice to Geo-Seis and other proposers that Presidential was the apparent successful offeror under the Solicitation and was a small business. Complaint at 5, ¶ 19. On October 7, Geo-Seis and others challenged the determination that Presidential was a small business on the ground that Presidential and its affiliated companies exceed the size standard of 1,500 employees. On November 2, 2006, the SBA Area III Office issued Size Determination No. 3-2007-3-4-5, finding that Presidential was a small business for purposes of this Solicitation. Complaint at 5, ¶ 21.

That same day, November 2, the contract was awarded to Presidential. Contract Award (Exhibit 1 to Presidential Motion to Dismiss). Presidential immediately began performance upon award of the contract and has been performing ever since. Declaration of Richard J. Pere, Sr. ("Pere Declaration") at ¶ 2.

On or after November 3, 2006,[2] Geo-Seis appealed to the SBA Office of Hearings and Appeals ("OHA") That appeal did not challenge the size determination but instead raised for the first time the argument that NAICS code in the solicitation was incorrect.

Moreover, Geo-Seis did not promptly protest the November 2 award decision at either the Government Accountability Office ("GAO") or this Court. Instead Geo-Seis waited almost a month, until November 27, 2006 to file its protest with the Government Accountability Office ("GAO") on November 27, 2006. In its protest before Comptroller General, Geo-Seis asserted all of the grounds it has brought before this Court, except those related to the size determination. However, because Geo-Seis failed to challenge the award promptly, Presidential's performance under the contract was ~~not suspended. Presidential continued to invest hundreds of~~ thousands of dollars preparing for deployment.

On December 7, 2006, the OHA issued an order dismissing the appeal, finding that it was an untimely appeal of the NAICS code and size standard. OHA Order Dismissing Appeal (Exhibit 2 to Presidential Motion to Dismiss). Geo-Seis moved for reconsideration and on January 25, 2007, the OHA issued a decision,

2 The exact date is not clear. The appeal petition itself says it was filed on November 4. Geo-Size Appeal Petition to OHA (Exhibit 4 of Presidential Motion to Dismiss). The OHA Order Dismissing Appeal states that it was filed on November 6. Order Dismissing Appeal at 1 (Exhibit 2 to Presidential Motion to Dismiss). Geo-Seis now claims for the first time that it filed its appeal on November 3. Complaint at ¶ 22. However, the key fact for the purposes of dismissal – that it was filed after contract award -- is undisputed.

finding that Geo-Seis failed to appeal the Area Office size determination and thus abandoned that issue. OHA Decision on Reconsideration (Exhibit 3 to Presidential Motion to Dismiss). However, again Geo-Seis did not promptly challenge that OHA decision in Court.

On March 5, 2007, the GAO issued a decision, denying each of the issues raised by Geo-Seis in that forum.

It was not until March 9, 2007, that Geo-Seis finally challenged the award in this forum, more that four months after contract award and after Presidential had invested nearly $1 million preparing for deployment. However, even then Geo-Seis did not apply immediately for a TRO. Instead it waited another five days, until March 14, 2007, to file the application at issue.

## ARGUMENT

When deciding if a TRO is appropriate in a particular case, a court uses the same four-part test applied to motions for a preliminary injunction. *See Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 266, 268 (1997); *Nat'l Football League Props., Inc. v. Coniglio*, 554 F.Supp. 1224, 1225 (D.D.C.1983). Plaintiff must show: (1) that the plaintiff will suffer a specific irreparable injury if performance is not enjoined; (2) that the plaintiff is likely to succeed on the merits of the claim; (3) that the harm to plaintiff outweighs any harm to defendant; and (4) that granting the requested relief serves the public interest. *W & D Ships Deck Works, Inc. v. U.S.*, 39 Fed. Cl. 638, 647 (1997) (*citing Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)) . "[T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States*,

3 F.3d 424, 427 (Fed. Cir. 1993). Here, all factors militate against a temporary restraining order.

## I. Plaintiff Is Not Entitled to an Injunction Because It Has Waited Too Long Before Filing

One important factor in deciding whether a TRO is appropriate is the plaintiff's delay in filing its application. For example in *United Int'l Investigative Servs., Inc. v. United States*, 42 Fed. Cl. 73, 75 (1998), the Court denied an application for a TRO because "plaintiff was unable satisfactorily to explain the nine day delay" between the filing of its complaint and the filing of its application for a TRO. Here the TRO should be denied because the situation is far more egregious. Here the contract was awarded on November 2, 2006 – over four months ago.

Moreover, at no point in this proceeding has the Plaintiff acted with any kind of exigency. The protestor did not file with GAO in time to obtain a stay. Knowing that it did not have the automatic stay at GAO, Geo-Seis did not then file with this Court in order to obtain a suspension of performance during the pendancy of the GAO protest and the appeal to the SBA OHA. Incredibly, Geo-Seis did not act promptly when it filed the instant action, waiting five days before it filed its application for this TRO.

As a result, Presidential has been performing under the contract for over four months. To date, Presidential has invested almost a $1 million in preparations for deployment of these helicopters. Pere Declaration at ¶4. Thus, it is too late for an injunction. Plaintiff's remedy, in the event that it prevails in this proceeding,

should be limited to bid and proposal costs. *Software Testing Solutions, Inc. v. United States*, 58 Fed. Cl. 533, 537 (2003) (no injunction where awardee had substantially begun performance).

## II. It Is Unlikely that Geo-Seis Will Prevail on the Merits

In support of it application for a TRO, Plaintiff has the burden of demonstrating that it is likely to succeed on the merits. However, Plaintiff only addresses a single issue in its papers – that two of Presidential's proposals were filed late. As discussed below, this argument is meritless.

### A. MSC Properly Accepted Presidential's Timely Filed First and Second Proposal Revisions

The Plaintiff argues that MSC improperly accepted allegedly late filed proposal revisions from Presidential on two separate occasions in this procurement. Geo-Seis TRO Memo at 1. However, those proposal revisions were not late because the agency issued amendments extending the deadline for filing. It is undisputed that Amendment 0009 extended the closing date and time for receipt of proposal revisions from March 22, 2:00 p.m. to March 23, 2006, at 11 a.m. Geo-Seis TRO Memo at p. 4. Presidential's proposal revision was received by the agency at 2:30 p.m. on March 22, 2006. Geo-Seis TRO Memo at p. 3. Similarly, it is equally undisputed that Amendment 0012 extended the closing time for second proposal revisions from 2:00 p.m. to 4:00 p.m. on August 15, 2006. Geo-Seis TRO Memo at p. 5. Presidential's second proposal revision was received by the Agency at 2:30 p.m., August 15, 2006. Geo-Seis TRO Memo at p. 4. Thus, this proposal revision was timely received under the extended deadline as well. Therefore, the arguments

regarding the timeliness of Presidential's filings have no merit, as previously found by the Government Accountability Office ("GAO") in its March 5, 2007 decision denying the protest brought by Geo-Seis for this same procurement.

It is not improper for an agency to extend the closing date for proposals after expiration of the original closing date in the interest of furthering competition. *Ivey Mech. Co.*, B-272,764, Aug. 23, 1996, 96-2 CPD ¶ 83; *see also Varicon Int'l, Inc.; MVM, Inc.*, B-255,808, B-255,808.2, Apr. 6, 1994, 94-1 CPD ¶ 240; *Inst. for Advanced Safety Studies – Request for Reconsideration*, B-221,330, B-221,330.2, July 25, 1986, 86-2 CPD ¶ 110. This is true even where the extension of the closing date is in response to one offeror's request. *Fort Biscuit Co.*, B-247,319, May 12, 1992, 92-1 CPD ¶ 440. The GAO has stated that "[r]egardless of the specific circumstances of those cases [in which agency extends the closing date for proposals], we have repeatedly approved of the issuance of amendments extending closing dates after the expiration of the original closing date when the result is enhanced competition." *Ivey Mechanical Co.*, B-272,764, Aug. 23, 1996, 96-2 CPD ¶ 83.

Although these decisions of the Comptroller General are not binding on this Court, they "provide valuable guidance." *La Gloria Oil and Gas Co. v. United States*, 72 Fed. Cl. 544, 561 (2006). Moreover, these decisions make sense. It is not irrational for an offeror to forego one invitation to modify its proposal, and then submit a proposal in response to a later request for revised proposals. The discretion to afford this opportunity rests with the agency.

In *Fort Biscuit Company*, the contracting officer telephoned a firm at 12:30 p.m. of the closing day, with receipt of proposals due by 2:00 p.m., and asked the offeror if they were going to submit a proposal. B-247,319, May 12, 1992, 92-1 CPD ¶ 440. When the offeror indicated that they would not be able to make the deadline, the contracting officer extended the closing time. The amendment was transmitted to offerors at 3:16 p.m., more than one hour after the original 2:00 p.m. deadline. *Id.* Two offerors had already submitted their proposals by the original deadline and the protester argued that it was improper to extend the closing date after the deadline had passed solely for the benefit of one offeror. *Id.* The GAO found the protest to be without merit. "The fact that the agency, with the knowledge that only four offerors were in the competition, later extended the BAFO due date when it learned that such action would be necessary to avoid losing one of those four offerors does not demonstrate [sic] bias in favor of Interbake or against Fort Biscuit." *Id.*

Similarly here, when in two instances the contracting officer received an email stating that FedEx was experiencing weather delays and therefore Presidential could not guarantee delivery by the closing deadline, the contracting officer determined that it was in the Government's best interest to extend the deadline. Geo-Seis TRO Memo at 3-5. Geo-Seis attempts to distinguish *Fort Biscuit* by focusing on the time the amendment was signed, rather than when it was issued to the other offerors. *Id.* at 13 ("the amendment [in Fort Biscuit] was actually signed prior to the expiration of the initial deadline.") The GAO decisions do not

focus on the timing of the signature on an amendment, and with reason. In light of the propriety of amending a solicitation after the due date for receipt of proposals has passed, the timing of the signature on the amendment is irrelevant. The agency properly extended the deadline by issuing an amendment and Presidential met this deadline.

The regulations cited by the Plaintiff also demonstrate that the issuance of the amendments after expiration of the original deadline was proper. FAR § 52.215.1, prohibiting acceptance of late proposals, and cited by the Plaintiff in support of its argument, does not prohibit the amendment of a solicitation after closing date and time.[3] FAR § 15.206(c), also cited by the Plaintiff, expressly provides for amendments issued after time and date for receipt of proposals:

> Amendments issued before the established time and date for receipt of proposals shall be issued to all parties receiving the solicitation.
>
> Amendments issued <u>after</u> the established time and date for receipt of proposals shall be issued to <u>all offerors that have not been eliminated from the competition</u>.

---

3 The Plaintiff cites to regulatory history of the FAR rewrite, during which earlier versions of FAR § 52.215 would have allowed contracting officers to accept late proposals whereas the final version does not. Geo-Seis TRO Memo at 16-17. The only commentary in the regulatory history with respect to the change is one bullet point that states: "[r]establishing the 'late is late' rule for receipt of proposals, responses to requests for information, and modifications." 62 Fed. Reg. 51224 (Sept. 30, 1997). However, establishing a bright line rule with regards to acceptance of late proposals does not preclude a contracting officer from amending the solicitation to extend the deadline and subsequently accepting a timely proposal under the revised schedule for receipt of proposals.

FAR § 15.206(b), (c) (emphasis added). This FAR language demonstrates that Amendments issued after the established time and date for receipt of proposals are clearly proper.[4]

Because it cannot successfully attack the issuance of the amendment itself, Geo-Seis attempts to create a novel obligation from the second prong of this FAR provision, which states: "[a]mendments issued after the established time and date for receipt of proposals shall be issued to all offerors that have not been eliminated from the competition." *Id.* Geo-Seis would interpret it to mean that prior to issuance of Amendments 0009 and 0012, because of their timing, "MSC had the obligation to determine, through the application of FAR § 52.215-1(c)(3)(ii)(A), whether Presidential was still eligible for award" based on its prior proposal submissions. Geo-Seis TRO Memo at p. 15. However, nothing in the language of the FAR provision requires the contracting officer to affirmatively eliminate offerors from the competition – based on prior versions of their proposal – as a prerequisite to issuing a subsequent amendment.[5] While the language makes it obligatory to issue the amendment to competitors still actively in the competition (as Presidential

---

4 It is worth noting that FAR § 52.215-1, Instructions to Offerors, is just that – it provides instructions to and is focused on informing offerors that late proposals will not be considered. In contrast, FAR § 15.206 provides instructions to contracting officers and expressly permits amendments after the established time and date for receipt of proposals.

5 The logical reading of this FAR provision is that it is meant to lessen the burden on the contracting officer (by relieving the contracting officer from having to issue amendments to those offerors who have clearly dropped out of the competition at this point), whereas Geo-Seis would read the provision to create an additional burden.

was here), it does not preclude or prohibit issuance of the amendment to others. In fact, the legislative history of the 1997 revisions to FAR § 52.215-1 clarifies that the obligation argued for by Geo-Seis was considered and then, in the final rule, rejected.[6] Not surprisingly, Plaintiff cites no case law to support its strained interpretation.

Despite the fact that Presidential's proposal revisions were timely filed pursuant to the amendments issued, Plaintiff focuses on the line of Court of Federal Claims cases governing the rejection and acceptance of late proposals. That case law is inapplicable here because the agency extended the deadline for filing and accepting revised proposals, and there is no question that Presidential met the new deadline. In *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 169-70 (2005), relied on throughout the Geo-Seis memorandum, the plaintiff submitted an offer six days late; but the solicitation had not been amended to extend the due date for receipt of offers. Similarly, in *Hospital Klean of Texas, Inc. v. United States*, 65 Fed. Cl. 618, 620 (2005), also cited by Geo-Seis, the due date, originally March 14 at 1:00 pm, was extended by modification at some point on March 14, changing the deadline to March 15. The plaintiff's proposal was received by the

6 An earlier proposed version of the FAR provision provided that "[a]mendments issued after the established time and date for receipt of proposal should be issued to all offerors still eligible for award," (61 Fed. Reg. 48386 (Sep. 12, 1996)) (emphasis added) whereas the final rule changed the language to: "[a]mendments issued after the established time and date for receipt of proposal shall be issued to all offerors that have not been eliminated from the competition." 62 Fed. Reg. 551225 (Sep. 30, 1997) (emphasis added).

agency on March 17, two days after the due date as extended, and was therefore inarguably late, even under the extended deadline. Finally, in *Conscoop-Consorzia Fra Cooperative Di Prod. E Lavoro v. United States*, 62 Fed. Cl. 219, 236 (2004), the Court found that the agency properly rejected the offeror's proposal as untimely, where the plaintiff took issue with the correct time zone to be applied in establishing the deadline.

Presidential's proposal revisions, while they may have been "late" with respect to the original solicitation deadlines, had the solicitation not been amended, were <u>not</u> late with respect to the solicitation in its final form, as amended. If the Plaintiff wished to challenge that amendment, the time to do so was before the new deadline for submission of proposal revisions. *See Aerolease Long Beach v. United States*, 31 Fed. Cl. 342, 358 (1994), *aff'd*, 39 F.3d 1198 (Fed. Cir. 1994) (unpubl.); *see also Bannum, Inc. v. United States*, 60 Fed. Cl. 718, 726 (2004) (when a plaintiff fails to challenge the terms of a solicitation before submitting its proposal, it waives the right to contest the evaluation process). Because Presidential's proposal revisions were timely, the Plaintiff has stated no valid grounds for challenging the award.

## III. Geo-Seis Will Not Be Irreparably Harmed If a TRO Does Not Issue

Geo-Seis will not be irreparably harmed if the temporary injunctive relief is not granted. The harms it argues are either illusory or have already occurred.

First Geo-Seis argues that it will suffer lost profits if the injunction does not issue. Geo-Seis TRO Memo at 17-18. However, the Court will not be taking anything away from Geo-Seis by not issuing the requested order. Geo-Seis is not

the incumbent and therefore will not be losing any tangible asset, such as a contract. As such, there is no issue of lost profits for the purpose of this temporary restraining order.

Second Geo-Seis argues that it will be deprived of its remedy if Presidential is allowed to continue performing because the helicopters will be "deployed shipboard for transit to the Pacific." Geo-Seis TRO Memo at 18. To the extent the shipment of the two Presidential helicopter deprives Geo-Seis of a remedy, that deed is already done. Those helicopters left port in San Diego for Guam at noon on March 14. This timing was necessitated by Presidential obligation to meet the contractual deadline for having the aircraft onboard the ships. Pere Declaration at ¶ 3. Moreover, Presidential has invested substantial sums of money, leased helicopters and hired staff in connection with performing the contract over the last four months. *Id.* at ¶ 4. To date, Presidental has invested almost $1 million in preparations for deployment of the helicopters. *Id.* The bell has already rung and Geo-Seis cannot now unring it. *Presidential Gardens, Assoc.v. United States*, 175 F.3d 132, 143-44 (2d Cir. 1999) Even assuming, *arguendo*, that there is a modicum of merit to Geo-Seis's arguments, under the circumstances here, Geo-Seis's lone remaining remedy would be recovery of its bid and proposal costs. *Software Testing Solutions, Inc. v. United States*, 58 Fed. Cl. 533, 537 (2003)

## IV. The Certain Injury the Government and Presidential Outweighs Any Injury to the Plaintiff

Because Presidential has substantially completed the first phase of the contract, the Government and/or Presidential stand to suffer significant injury if the

requested temporary retraining order issues. Such injuries are factors the court should weigh in ruling on Plaintiff's motion. *See Sierra Military Health Srvcs., Inc. v. United States*, 58 Fed. Cl. 573, 584-85 (2003); *Labat-Anderson, Inc. v. United States*, 50 Fed. Cl. 99, 110 (2001); *Cerebonics, Inc. v. Garrett*, No. 91-0239, 1991 WL 45738, at *2649 (D.D.C. Mar. 20, 1991) (Mem. Op.).

First, if the Court halts Presidential's performance, the Government will be denied the Vertical Replenishment Services that it has been seeking since September 2006 when it issued a notice of proposed award to Presidential. As noted above, the helicopters were shipped to Guam for deployment on March 14. Pere Declaration at ¶ 3. Presidential has hired all of the pilots and maintenance staff and obtained the required certifications. *Id.* at ¶ 5. As such, termination of Presidential's contract would cause substantial disruption to services deemed necessary to the national defense. Disruption or delay of such necessary services and the impact on the ultimate beneficiary, the U.S. Government, weighs heavily against injunctive relief. *See Sierra*, 58 Fed. Cl. at 584 (holding that disruption to administration of military health care services and hardship imposed on beneficiaries weighed in favor of agency override of an automatic stay).

Second, a temporary restraining order would severely disrupt Presidential's effort to complete the deployment. *Sierra*, 58 Fed. Cl. at 584 (declining to reverse override of automatic stay, in part, because a stay would be disruptive to transition work then being performed). The cost Presidential has invested in hiring new staff to perform this contract alone weighs against granting Plaintiff's motion.

*Cerebonics*, 1991 WL 45738, at *2649 ("[The intervening awardee] would also suffer if it were required to stop work .... The company went to great expense to ready itself to perform the contract."). Moreover, depending on the length of delay, it is entirely possible that the delay could cause Presidential to lose some of the key personnel that it hired to perform this contract. Pere Declaration at ¶ 7. The District Court has recognized the likelihood of such result in *Cerebonics, Inc. v. Garrett*. *Id.* at *2649 ("If the [performing awardee] were ordered to stop work ... it is likely that the company would lose [it's current] employees."). The result will be that, if the protest is denied, Presidential may be handicapped in its ability to perform as required under the contract.

Third, unlike Geo-Seis, Presidential will suffer real measurable financial harm if the injunction issues. Because Presidential has this "standing army," that army must be paid salaries and benefits irrespective of whether they are performing for Presidential on the contract. Specifically, Presidential is incurring hundreds of thousands of dollars in costs every month for payroll and benefits, supplies and aircraft associated costs.[7] Pere Decl. ¶ 5. Moreover, in addition to these significant costs, if an injunction issues, Presidential will be deprived of the revenues that would otherwise receive under the contract. At this point, these lost revenues will amount to hundreds of thousands of dollars per month. *Id.* ¶ 6. These significant costs and lost revenues represent irreparable harms to Presidential. *See Labat-*

---

7 Because a protective order has not been issued, Presidential has not provided its detailed cost and projected revenue data. However, that data is available and can be provided upon request.

*Anderson*, 50 Fed. Cl. at 110 (recognizing lost profits as an irreparable injury to an intervening awardee); *Lametti & Sons, Inc. v. City of Davenport*, 432 F.Supp. 713, 715 (S.D. Iowa 1977) ("If the Court holds up this project [then the awardee] will face[] increased costs and delays detrimental to its profit opportunities. The concept of irreparable injury does not aid only the plaintiff.").

**V. A TRO Is Not In the Public Interest**

Geo-Seis's lone public interest argument is that it would "preserv[e] the integrity of the procurement process by requiring the government to follow its procurement regulations." Geo-Seis TRO Memo at 20. However, that argument quickly falls aside because, as explained above, the government has conformed its conduct in this procurement in accordance with the procurement regulations and Geo-Seis has not carried its burden to show otherwise. Moreover, the integrity of this procurement has already been preserved as Geo-Seis has been afforded the opportunity to litigate each and every issue that it now alleges and uniformly no merit has been found with respect to each and every one of these issues.

**CONCLUSION**

Geo-Seis has not met its burden of establishing the need for a temporary restraining order Presidential's performance. Accordingly, Presidential respectfully requests that the Court deny Geo-Seis application for a temporary restraining order.

Respectfully submitted,

/s/ David Hammond
David Hammond
(Counsel of Record)
John E. McCarthy Jr.
Adelicia Cliffe Taylor

Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
(202) 624-2500
Fax: (202) 628-5116

March 16, 2007

3526