Davis Wright Tremaine LLP

ANCHORAGE BELLEVUE LOS ANGELES NEW YORK PORTLAND SAN FRANCISCO SEATTLE SHANGHAI WASHINGTON, D.C.

ROBERT K. STEWART, JR.
Direct (907) 257-5336
bobstewart@dwt.com

SUITE 800
701 WEST EIGHTH AVENUE
ANCHORAGE, AK 99501-3408

TEL (907) 257-5300
FAX (907) 257-5399
www.dwt.com

February 20, 2007

Mr. Chris L. Carson
Procurement Officer
State of Alaska, Department of Health and Social Services
Division of Financial & Management Services
333 Willoughby Avenue, Suite 760
P.O. Box 110650
Juneau, Alaska 99811-0650

Re: State of Alaska, Department of Health and Social Services, Request for Proposals No. 2007-0600-6530

Dear Mr. Carson:

We are attorneys for Qualis Health ("Qualis"), 10700 Meridian Avenue North, Suite 100, Seattle, Washington 98133-9075, 206-364-9700 (Voice), 206-368-2419 (Facsimile), and hereby make our appearance on its behalf. Our address, telephone and facsimile numbers appear on our letterhead.

Pursuant to Alaska Stat. § 36.30.560, Qualis protests the Notices of Intent to Award issued by the State of Alaska, Department of Health and Social Services, Division of Financial & Management Services ("DHSS") of contracts for Lots 1, 2 and 3 to Mountain-Pacific Quality Health Foundation ("Mountain Pacific") pursuant to Request for Proposals No. 2007-0600-6530 for Quality Improvement Organization and Authorizing Entity Services ("RFP").

EXHIBIT 1
Page 1 of

A. Standing.

Qualis is an "interested party" for the purposes of filing this protest because it is an actual offeror whose economic interest might be affected substantially and directly by the award contracts pursuant to the RFP to Mountain Pacific. 2 A.A.C. § 12.990(a)(7).

B. Timeliness.

This protest is timely filed within ten days after issuance of the Notices of Intent to Award Lots 1, 2 and 3 by the procurement officer. Alaska Stat. § 36.30.565. The Notices of Intent to Award were issued on February 8, 2007.

C. Stay of Award.

Qualis requests that DHSS stay issuance of any awards pending the outcome of this protest because 1) a reasonable probability exists that the protest will be sustained, and 2) a stay of awards is not contrary to the best interests of the state. Alaska Stat. § 36.30.575.

The basis for a finding that there is a reasonable probability that this protest will be sustained is set forth in Section D. A stay of awards would be in the best interests of the state because it would insure a continuity of critical utilization management and case management services by a qualified Quality Improvement Organization (QIO) until the issues in this protest are resolved with finality. Among other things, Mountain Pacific states in its proposal response that they will solicit, and may be currently soliciting, Qualis employees who are currently performing services under the incumbent contract which Qualis holds for utilization management and case management services. Mountain Pacific Proposal, p. 70. If those employees terminate their employment with Qualis and Qualis prevails in this protest, there will be an unavoidable and otherwise unnecessary impact upon the delivery of those critical services. The unintended consequences could be an adverse impact upon the services provided by Qualis to medically fragile Medicaid beneficiaries. In order to avoid any interruption of services, Qualis is willing to extend its existing contract on a month by month or other basis acceptable to the state at the current contract rates during the pendency of this protest. See Exhibit 1.

D. Factual and Legal Bases for Protest.

1. Overview.

Across the board, the proposal evaluation committee found that Qualis submitted significantly superior technical proposals than Mountain Pacific on Lots 1, 2 and 3. Qualis' qualitative superiority over Mountain Pacific was most marked as to Lot 1, involving utilization management and case management services, as to which Qualis was rated nearly 50% better than Mountain Pacific.

Notwithstanding Qualis' technical superiority, DHSS decided to award the contracts for these three lots to Mountain Pacific solely because Mountain Pacific offered lower prices. However, as discussed below, Mountain Pacific failed to satisfy numerous minimum requirements set forth in Section 2.08 and elsewhere in the RFP. Aside from making Mountain Pacific nonresponsive, those shortcomings provided Mountain Pacific with a disparate cost advantage to the prejudice of Qualis. The fact that Mountain Pacific is not making the same required commitments as Qualis to various elements of staffing, processes and technology (equipment/programs/electronic transmission capabilities), provided it with an opportunity to trim costs and gain an unfair price advantage.

Based on the record produced to Qualis as of this date, the factual and legal bases for protest are as follows[1]:

2. Mountain Pacific Was Not Entitled to Either of the Alaska Bidder Preferences Because it Was Not Qualified to do Business under the Laws of the State of Alaska.

In order to qualify for the Alaska bidder preferences, a proposer must not only hold a current Alaska business license, Alaska Stat. § 36.30.170(b)(1), and maintain a place of business in Alaska for six months prior to bid submittal, Alaska Stat. § 36.30.170(b)(3), but also be "qualified to do business under the laws of the state," Alaska Stat. § 36.30.170(b)(4). Because an offeror must maintain a place of business in Alaska for six months prior to bid submittal, it is also clear that a foreign corporation seeking to qualify for the Alaska bidder preference must be deemed to be transacting business in the state within the meaning of Alaska Stat. § 10.06.705. In order to qualify to do business in

[1] Qualis expressly reserves the right to timely supplement this protest at such times in the future as any additional bases for protest become known.

Alaska, a foreign corporation which transacts business in the state must register with and obtain a certificate of authority from the Department of Commerce, Community and Economic Development, Division of Corporations, Business and Professional Licensing ("Division of Corporations").

Mountain Pacific was not eligible to qualify as an Alaska bidder because even though it held an Alaska business license and maintained a place of business in Alaska for six months prior to bid submittal, it never registered with the Division of Corporations or obtained a certificate of authority which is required in order to receive the Alaska bidder preferences. Mountain Pacific was thus not qualified to do business under the laws of the state when their RFP proposal was submitted and, for that reason, failed to satisfy the requirement of Alaska Stat. § 36.30.170(b)(4). Accordingly, Mountain Pacific was not entitled to receive either the 5% Alaskan bidder price preference or the 10% Alaskan offeror point preference.

3. Mountain Pacific's Proposal Should Have Been Determined to be Nonresponsive Because it Failed to Satisfy Numerous, Critical Requirements Stated in Section 2.08 of the RFP.

a. Mountain Pacific Failed to Provide Evidence that Demonstrated that it Possessed Two Years of Experience in the Type of Case Management Required by the State.

Section 2.08 of the RFP required proposers to "provide evidence in their proposal that will demonstrate" a minimum of two years experience in medical case management. RFP, ¶ 3, p. 14. Qualis submits that Mountain Pacific failed to provide the required evidence that it met this requirement and should have been found to be nonresponsive.[2] The only case management experience for which Mountain Pacific provided evidence was with the Montana Department of Public and Human Services and the case management services it provided to that agency were extremely limited, minimal in scope and quantity and materially different than those which DHSS was seeking to obtain through the RFP.

Case management is defined by Mountain Pacific in the "Montana Medicaid

---

[2] A proposal is nonresponsive when it does not conform in all material respects to the solicitation. 2 AAC 12.990(9). "A variance is material if it gives the bidder a substantial advantage over the other bidders and thereby restricts or stifles competition." Chris Berg, Inc. v. State, Dep't of Transp. and Pub. Facilities, 680 P.2d 93, 94 (Alaska 1984).

EXHIBIT 1
Page 4 of ____

Utilization and Case Management Services Contract Handbook and Resource Guide" as follows: "The process of facilitating the development and implementation of a plan to efficiently use health care resources to achieve optimum outcomes. Case management is performed for high cost, complex cases." Mountain Pacific Proposal, Attachment G, Contract Handbook & Resource Guide, p. 5. That definition does not correspond with nationally recognized definitions of case management as promulgated by URAC in its Case Management Standards (Version 3.0) or by the Case Management Society of America (CMSA) Standards of Practice for Case Management (Revised 2002).

Both URAC and CMSA define case management as "a collaborative process of assessment, planning, facilitation and advocacy for options and services to meet an individual's health needs through communication and available resources to promote quality cost-effective outcomes." Standards of Practice for Case Management, Case Management Society of America (Revised 2002), p. 5; Accreditation Program Guide for Case Management Standards (URAC) (Version 3.0), p. 13.

The scope of case management services Mountain Pacific has provided to Montana Medicaid has not included key aspects of the nationally recognized definition of case management, most particularly:

- Mountain Pacific's experience does not include any reference to advocacy
- Mountain Pacific's experience does not specifically include promoting quality outcomes

Mountain Pacific's experience and approach further emphasizes that case management is for high-cost, complex cases. It fails to evidence inclusion of individuals with chronic injuries or illnesses in its case management program. In contrast, the CMSA Standards of Practice states in its Statement of Philosophy that "all individuals, particularly those experiencing catastrophic and high chronicity injuries or illnesses, should be evaluated for case management services." Standards of Practice for Case Management, Case Management Society of America (Revised 2002), pp. 6-7.

Moreover, the following description of case management contained in the "Hospital Inpatient Services" document which Mountain Pacific submitted evidences that its case management has been limited to providing discharge planning from a hospital: