> The Department provides assistance for hospitals with coordination of discharge planning for a client who has the potential to be a catastrophic case. Either upon admission or when the charge master reaches $30,000, the utilization review staff or discharge planning staff may contact the case management contractor (see Key Contacts). This services (sic) is designed to provide case management assistance to your hospital; not to supplant the services your staff provides.

Mountain Pacific Proposal, Attachment G, p. 2.3. There is no description of case management being provided after discharge from the hospital.

In addition, the reference check DHSS conducted with Mary Patrick of Montana Medicaid reflected that Mountain Pacific's case management experience for that organization, the only reference Mountain Pacific submitted which indicated that case management was part of the services provided, was "minimal," that there were no minimal requirements under that contract to be a case manager and that Mountain Pacific was not required to provide Montana Medicaid with return on investment reports.

As part of its proposal, Mountain Pacific submitted a Medicaid utilization billing summary for September 1, 2006 through September 30, 2006. Mountain Pacific Proposal, Attachment E. That report shows there was only one case in case management at that time, which represents 0.69% of their total services completed for Montana Medicaid during that month. Furthermore, that "case" is defined as a review. Because Montana Medicaid is the only customer for whom Mountain Pacific is providing any form of what might be called case management, this represents its only experience with case management. This does not appear to be a sufficient volume of activity for the kind of experience commensurate with that required by Section 2.08 of the RFP.

Further, two out of the three key personnel which Mountain Pacific identified for this activity have no experience whatsoever with case management. Sharon Stiassny, proposed as its Alaska Office Director, will have direct responsibility over the case management staff. However, as Mountain Pacific candidly admits: "Ms. Stiassny is not a nurse and does not have case management experience . . .." Mountain Pacific Proposal, p. 71. Dr. Jerome List, proposed by Mountain Pacific as its Medical Director, will have responsibility for physician review activity relating to case management. Id. Like Ms. Stiassny, Dr. List has absolutely no disclosed experience whatsoever with case management. Id., Attachment I.

Mountain Pacific's only experience has been in providing involuntary case management services to the Health Resources Division of the Montana Department of Public and Human Services. Mountain Pacific Proposal, p. 3. Because Mountain Pacific's only experience is with involuntary case management services, it does not have the required experience in providing case management as that activity is defined in the RFP and by national standards, such as URAC. The differences between involuntary and voluntary systems are material, most particularly with regard to patient involvement and consent and the variety of protocols which surround such a patient driven, as opposed to provider or payor driven, system.

In sum, the "evidence" which Mountain Pacific provided conclusively establishes that it has very little experience with case management, that it has only performed those services for a single client and that such experience as it will offer DHSS has been limited to a narrow range of case management services that do not meet the breadth of activities which are being procured for Alaska. Given those undisputable facts, it was not reasonable for DHSS to determine that Mountain Pacific satisfied the minimum requirement of provide evidence which demonstrated a minimum of two years experience in medical case management. RFP, § 2.08, ¶ 3, p. 14; § 6.02, ¶ 4.b.1, p. 43. Additionally, Mountain Pacific's limited case management program artificially lowers their costs to the prejudice of Qualis.

b. <u>Mountain Pacific Failed to Provide Evidence that Demonstrated that it Possessed One Year of Experience Delivering the Full Range of Electronic Interface Capabilities Required by DHSS</u>.

Section 2.08 of the RFP required proposers to "provide evidence in their proposal that will demonstrate" a minimum of one year of experience with timely electronic interface capabilities for all lots. RFP, ¶ 4, p. 14.

Mountain Pacific failed to provide the required evidence that it met that requirement because it did not document any experience with transmitting denials. The fact that Mountain Pacific did not include denials in the electronic interface was noted in the comments from three of the members of the proposal evaluation committee. Their recognition of that shortcoming should have resulted in a finding of nonresponsiveness.

If Mountain Pacific does not have that existing capability, it will inevitably add

costs and time delays to DHSS for it to develop and implement such capacity. Mountain Pacific's failure to address this requirement potentially affects its bid price in a manner prejudicial to other proposers. Additionally, DHSS will incur greater costs, beyond those contemplated under this RFP, to process denials until an electronic interface is built, tested and accepted by DHSS.

c. Mountain Pacific Failed to Provide Evidence that Demonstrated that it Possessed One Year of Experience Delivering a Robust Electronic Data Maintenance, Storage, Retrieval, and Reporting System that Met the Full Range of Capabilities Required by DHSS.

Section 2.08 of the RFP required proposers to "provide evidence in their proposal that will demonstrate" a minimum of one year of experience "in providing or operating" a "robust electronic data maintenance, storage, retrieval, and reporting system" with the capability to, among other things, "document individual case activities" and "perform reporting functionality." RFP, ¶ 5, pp. 14-15.

Mountain Pacific failed to provide the required evidence that it met that requirement because there is no reference in its proposal regarding the case management functionality of their system, such as how it will document cases and how that information will flow through its system.

d. Mountain Pacific Failed to Provide Evidence that Demonstrated that it Possessed One Year of Experience Delivering HIPAA Electronic and Web-Based Communications with Providers.

Section 2.08 of the RFP required proposers to "provide evidence in their proposal that will demonstrate" a minimum of one year of experience "in providing or operating" a "robust electronic data maintenance, storage, retrieval, and reporting system" with the capability of, among other things, "Communication with providers in various modes (phone, FAX, HIPAA electronic, web-based, etc.)." RFP, ¶ 5, pp. 14-15.

Mountain Pacific failed to provide the required evidence that it met that requirement because it did not document experience in communicating in HIPAA electronic and web-based transactions.

4. Mountain Pacific's Proposal Should Have Been Determined to be Nonresponsive Because it Failed to Document that Mountain Pacific Performed UM or CM in Accordance with Either URAC Standards or Other Similar Standards.

Amendment No. 1 to the RFP established the following requirement for Lots 1 through 3: "The department requires that URAC standards or similar standards approved by the State, be utilized or established for UM and CM when providing services under this component/lot." Amendment No. 1, ¶¶ 3-7. See also Amendment No. 1, ¶ 8 ("The Offeror must identify their experience utilizing URAC standards or similar standard for services in components 1, 2, 3, 4, and 6."); QIO Pre-Proposal Conference, Questions and Answers, Section 2, ¶ 22 ("Instead, the Offeror is asked to describe how their policies and procedures compare to URAC standards similar.").

In its proposal, Mountain Pacific represented that "[f]or components 1, 2, 3, and 4 we will perform the care management functions associated with the RFP in accordance with standards that are similar to the American Accreditation HealthCare Commission/URAC." Mountain Pacific Proposal, p. 24. However, Mountain Pacific failed to identify such standards anywhere in its proposal. Instead, Mountain Pacific described processes that are in no way similar to those standards. Mountain Pacific's failure to commit to compliance with standard requirements applicable to all proposers provided it with a disparate competitive advantage which potentially affected its total bid price, quantity, quality and/or performance of these contracts and was prejudicial to all other proposers.

DHSS erred in its evaluation of Mountain Pacific's proposal regarding this RFP requirement in three ways. First, DHSS should have found Mountain Pacific's proposal nonresponsive because it failed to identify the nationally recognized standards, if they were different from those established by URAC, with which it would comply. The requirement of compliance with "standards" clearly contemplated that a proposer would conduct its UM and CM services in accordance with a set of nationally recognized protocols established by an independent third-party. That requirement called for more than mere statement that the proposer's internal policies and procedures would in some manner be similar to nationally recognized standards.

Second, even if it is assumed that it would have been sufficient for Mountain Pacific to represent that its internal policies and procedures were similar to a set of

nationally recognized standards, DHSS failed completely to evaluate whether the policies and procedures which could be gleaned from Mountain Pacific's proposal were similar to URAC standards or any other nationally recognized standards. There is no mention whatsoever in any of the evaluation documents that DHSS performed such an assessment as required by the specifications of the RFP. In addition, nowhere in its proposal did Mountain Pacific comprehensively "describe how [its] policies and procedures compare to URAC standards" or identify its experience "utilizing URAC standards or similar standard" as was required by the RFP.

Finally, and most critical, a careful review of Mountain Pacific's proposal shows that it has not documented that it will comply with the vast majority of relevant URAC standards, the benchmark that it represented in its proposal that it would meet. For the sake of readability, only the most egregious of those deficiencies are highlighted in the body of this protest letter. A complete analysis of those deficiencies is set forth in Exhibit 2. In summary, Mountain Pacific has documented compliance with only 32% of the URAC Core Standards, 50% of the UM Standards and 17% of the CM Standards. A deviation of that magnitude is clearly material and mandates a finding by DHSS that Mountain Pacific's proposal was nonresponsive.

a. Mountain Pacific Does Not Comply with URAC Core Standard 11 - Senior Clinical Staff Responsibilities.

This standard relates to the qualifications of a senior clinical staff person, or Medical Director, who is responsible for overseeing and managing the clinical peer reviewers (physician reviewers) for an organization.[3] This physician must be experienced with the various types of Medicaid utilization reviews, including concurrent, preservice, retrospective and appeals, as well as focused case reviews, in order to ensure that physician review is conducted appropriately and conforms to relevant law and regulation. The medical director should also be available to assist nursing staff with specific issues in case management, and thus requires a familiarity and experience with the case management process and the ancillary utilization review process as well. Expertise in Medicaid peer review is critical for the Medical Director to ensure protection of the interests of the State and of its enrollees/beneficiaries.

Mountain Pacific did not meet this standard because there is no job description or other description of the job duties for this position contained in its proposal. In addition,

[3] The full text of all of the relevant URAC standards can be found in Exhibit 2.