as discussed above, the person it has proposed as its Medical Director has no documented experience with utilization review or medical case management. Mountain Pacific Proposal, Attachment I.

b. Mountain Pacific Does Not Comply with URAC Core Standard 29 - Complaint and Appeal Reporting.

This standard relates to the requirement that an organization must have a clearly defined complaint process in place for patients, providers and other stakeholders. Such a process allows those key stakeholders to have complaints submitted, addressed and resolved in a timely manner.

Mountain Pacific did not meet this standard because it did not describe such a complaint resolution process. As a consequence, the State's key stakeholders in the Medicaid program, e.g., patients and providers, have no assurance of a mechanism through which their concerns will be addressed. In addition, Mountain Pacific obtains a disparate cost advantage over other proposers because it does not provide such a complaint process.

c. Mountain Pacific Does Not Comply with URAC Core Standards 32-37 - Quality Management.

While Mountain Pacific described a quality program in its proposal, its program is missing numerous key aspects of quality management as established by URAC. Most notably, Mountain Pacific did not describe how quality improvement projects and priorities are identified and addressed, the use of performance indicators in utilization review and case management processes and how improvement projects are implemented. It did not even mention a quality management program for case management. Those are serious defects. Proposers must have clearly defined quality control mechanisms in place to provide DHSS with an adequate level of confidence that they will systematically monitor performance against regulatory and accreditation standards. Again, Mountain Pacific's failure to offer a URAC compliant quality management system gave it an unfair competitive pricing advantage.

d. Mountain Pacific Does Not Comply with URAC UM Standard 15 - Peer-to-Peer Conversation Availability.

Under this URAC standard, it is critical for there to be a mechanism for a peer-to-peer (physician-to-physician) discussion when medical necessity is questioned during the course of utilization reviews of cases where care is on-going. This supports due process as well as consistency with nationally recognized standards. For DHSS, it results in better relationships with the provider community because providers have an immediate communication channel through the peer-to-peer discussion with qualified clinicians.

Mountain Pacific does not meet this standard because peer-to-peer discussions are only offered after a denial has been issued. URAC standards specify that peer-to-peer discussions must be offered before the denial is issued. Mountain Pacific's lack of a peer-to-peer discussion before issuing a denial is a serious flaw in the review process, especially for reviews of on-going care, such as preauthorization and continued stay reviews. It also affords Mountain Pacific an inequitable competitive advantage because its cost per review will be lower since physician involvement is limited.

e. Mountain Pacific Does Not Comply with URAC UM Standards 17-19 - Review Timeframes.

Under the Alaska Medicaid contract, the Quality Improvement Organizations (QIO) must conduct reviews and issue their decisions before the fiscal agent issues reimbursement. With preauthorization reviews, Medicaid beneficiaries must wait for the review decisions from the QIO before they receive care. Mountain Pacific did not specify any timeframes for its review processes. The outcome is a lack of accountability to providers, beneficiaries and DHSS as to when Mountain Pacific will complete its reviews. Delays in care and in claims payment could be a result because the QIO must render decisions before care is received and claims are paid. This could be a significant impact on the Alaska Medicaid program. Additionally, the lack of timeframe accountability may impact a recipient's ability to file timely requests for fair hearings and a provider's ability to request second level appeals from DHSS. The lack of established timeframes also affords Mountain Pacific an inequitable competitive advantage because it can adjust its staffing in ways other proposers cannot.

f. Mountain Pacific Does Not Comply with URAC CM Standard 2 - Case Manager Load.

Mountain Pacific represented in its proposal an intent to staff the case management function with two nurse case managers and one lead. Currently, Qualis' case managers are handling an average of 230 active cases at any given time. Given that total caseload, Mountain Pacific is proposing that its case managers may handle in excess of 75 active cases at any given time. Mountain Pacific provided no evidence that this is a reasonable caseload or how it would monitor caseloads and intervene if they exceeded reasonable levels. Based upon Qualis' extensive Medicaid case management experience, it submits that those proposed caseloads are excessive and will result in decreased service levels to Medicaid beneficiaries. In addition, by understaffing this function, Mountain Pacific has gained a disparate competitive advantage because it is able to reduce its labor costs.

g. Mountain Pacific Does Not Comply with URAC CM Standard 4 - Case Manager Supervisor Qualifications.

This URAC standard is designed to insure that those persons who provide direct supervision for case managers have appropriate education, licensure and experience to perform their responsibilities.

Ms. Stiassny, Mountain Pacific's designated manager of case management, meets none of those URAC requirements and Mountain Pacific does not indicate how she would meet other nationally recognized standards. Ms. Stiassny, who will directly manage the case managers in Alaska, does not appear to possess a social work license, or a case management certification, or be on a track to receive such CM certification. No licensure status for Ms. Stiassny is reported in Mountain Pacific's proposal and her name does not appear on the Alaska Division of Occupational Licensing online database which lists licensed social workers.

h. Mountain Pacific Does Not Comply with URAC CM Standard 8 - Case Manager Professional Development.

Mountain Pacific does not satisfy this URAC standard because it did not describe the kind of professional development it intends to provide to its case managers in its proposal. It also utterly ignored the requirement for education in cultural diversity.

In the absence of a binding obligation as to the type, frequency and level of professional development, Mountain Pacific gains a disparate competitive advantage because it can avoid the high costs of on-going professional development. More importantly, given Alaska's high percentages of minority beneficiaries, especially Alaska natives, and rural delivery modalities, the absence of an established cultural diversity program is critical.

i. Mountain Pacific Does Not Comply with URAC CM Standards 10-11 - Consumer Rights and Protection.

Under these URAC standards, insuring the protection of beneficiary, i.e., consumer, rights is a key element of the obligations of a case management organization in the delivery of case management services. Examples of some of URAC's consumer rights and protections include those related to the prevention of suicide, the prevention of violence and the identification and reporting of abuse. Those types of safeguards provide DHSS with assurances that case management services are being provided in the context of patient safety and advocacy.

None of those elements are described anywhere in Mountain Pacific's proposal. This is a significant flaw in its case management program that results in less service to the DHSS and Medicaid beneficiaries, less protections for those compromised and fragile individuals, as well as lower costs to Mountain Pacific.

j. Mountain Pacific Does Not Comply with URAC CM Standard 16 - Case Management Consent.

Mountain Pacific does not meet this URAC standard because timeframes for consent are not described in its proposal. In Alaska, case management is a voluntary system and, obviously, informed patient consent is a critical component of such a system. By failing to adequately document various processes and related timeframes by which its case managers will obtain consent, Mountain Pacific has failed to provide DHSS with necessary assurances that beneficiaries will fully understand the voluntary aspects of the program. It also reduces the amount of process steps in case management and is therefore cheaper for Mountain Pacific to implement.

5. Mountain Pacific's Proposal Should Have Been Determined to be Nonresponsive Because it Failed to Supply Proof that it is Accepting, Processing and Transmitting 278 Transactions in a HIPAA Compliant Format.

Section 5.01.2 of the RFP states that "[t]he Offeror must supply proof that they are accepting, processing and transmitting electronic requests and response (sic) for certification (278 transactions) comply in a HIPAA compliant format." RFP, p. 36 (emphasis supplied). This requirement made it clear that proposers were required to evidence existing capability and experience with acceptance, processing and transmittal of 278 transactions as opposed to a future commitment to obtain that capability.

Mountain Pacific failed to satisfy that requirement since it did not provide proof of existing capability and experience with acceptance, processing and transmittal of HIPPA 278 transactions. Instead, it stated that it would accept and respond, but admitted that as of the proposal submission date it had not tested or verified a 278 interface and that the testing and verification would not be completed until February 1, 2007. Mountain Pacific Proposal, p. 21. It expressly stated that it has not used a 278 transaction set. Id. Because Mountain Pacific did not provide proof that it was processing and transmitting 278 certification transactions as of the proposal submittal date, its proposal should have been determined to be nonresponsive.

6. Mountain Pacific's Proposal Should Have Been Determined to be Nonresponsive Because it Failed to Adequately Describe its Case Management System.

Paragraph 8 of the subsection of Section 501.3 of the RFP entitled "System Requirements - CM Systems Requirements for UM/CM Reviews" required the following, among other things:

> The successful Contractor(s) must have a flexible system that provides integrated patient centered UM/CM, patient eligibility access, automated correspondence and surveys, support for all pertinent regulatory requirements and professional standards.

RFP, p. 41.