Mountain Pacific failed completely to describe its case management system as specifically required by Section 501.3 of the RFP. Although the utilization management system it proposed to implement is described, there is a total lack of any kind of description of how its case management system functions. While Mountain Pacific states that it "will meet all CM Systems Requirements for UM/CM Reviews areas of section 501.3," Mountain Pacific Proposal, p. 29, there is no evidence of case management functionality. Specifically there is no reference to case management systems functionality in the three modules it describes in its system (transportation, long-term care, PASRR) as well as the one system it is currently developing (Personal Assistance Services Review).

Likewise, Section 5.01.1 of the RFP entitled "Care Management (UM and CM) Activities" outlines the case management work that is required under the contract to ensure that appropriate medical services are provided to Alaskan patients at a reasonable cost. For case management, they were:

- Assessing patient's personal situation/challenges; providing information, resources and referrals to support treatment; work with patient/family/HCPs to develop a coordinated care plan; discharge planning; coordinating services of multiple providers and agencies; reporting of findings; conclusions; recommendations; calculation of ROI; etc.
- Coordinated UM for patients being case managed

RFP, p. 30.

None of these essential case management functions set forth in Section 5.01.1 are addressed in Mountain Pacific's proposal in regards to its ability to document, track or report these activities. In addition, there are no modules or functionality described regarding integrated patient centered UM/CM system capabilities. Consequently, Mountain Pacific's proposal was not responsive to this RFP requirement.

Moreover, Mountain Pacific's failure to commit to compliance with robust electronic data maintenance, storage, retrieval and reporting system requirements applicable to all proposers provided it with a disparate competitive advantage which potentially affected its total bid price, quantity, quality and/or performance of this contract and was prejudicial to all other proposers.

7. Mountain Pacific's Proposal Should Have Been Determined to be Nonresponsive Because it Failed to Document a Reasonable Plan to Achieve a Web-Based UM Interface within One Year.

Paragraph 11 of the subsection of Section 501.3 entitled "Prior Authorization System" required that "[s]uccessful Contractor(s) must develop and the system must provide the capability for providers to submit and check status of PA request via the Internet (web-based UM) within one year of implementation." See also RFP § 5.02, ¶ 4 ("Web-based UM interface for use by providers within one year of implementation"). For DHSS to rationally evaluate a proposer's response to this requirement where a proposer did not have existing web-based capability, the proposer would need to provide DHSS with sufficient details concerning its plans for design, testing and implementation of such a system so that DHSS could make a reasoned judgment as to whether such capacity could be provided within one year.

Mountain Pacific failed completely in that regard. While it discussed web-based UM, Mountain Pacific Proposal, p. 68, it did not submit a project plan or approach describing how it would achieve implementation of a web-based UM interface within one year of implementation.[4] In addition to describing a software development methodology, a responsive proposal should have included a software development project plan within their software development framework. A viable project plan would outline the software development steps, timeframe and level of participation required to allow DHSS to evaluate the required level of user participation and timeframe in the software development effort. Those types of information are necessary in order to evaluate the realism of a software development project in light of the high rates of failures associated with software development projects resulting from such factors as projects going too long, being too costly, not achieving functionality. Without a well-described software development project plan for the web-based UM capabilities reflecting a mutual understanding of "must have" web-based software requirements from DHSS, any system go-live date commitments are only goals with no assurance of achieving implementation in one year as required in the RFP. For these reasons, Mountain Pacific's proposal was not responsive to this requirement.

---

[4] Several evaluation committee members made specific comments regarding Mountain Pacific's lack of a webbased UM system. Carol Downey stated that capabilities were "not shown." Dave Campana stated that "they don't have one," and "no web UM tool." Jeri Powers stated, "none." Cindy Christensen stated, "no."

8. Mountain Pacific's Proposal Should Have Been Determined to be Nonresponsive Because it Failed to Provide Detailed Documentation Outlining its Methodology for Calculation of ROI for both UM and CM Activities.

Section 6.04 of the RFP required that proposers not only report historical return on investment ("ROI") information, but also "provide detailed documentation outlining their methodology for calculation of ROI for both UM and CM activities." RFP, p. 45. Section 4.01 of the RFP provides that ROI is to be "based on dollars saved through denied days or stays." RFP, p. 27.

Mountain Pacific's proposal was not responsive to this requirement because it only provided historical ROI data. Mountain Pacific Proposal, p. 59. Mountain Pacific's proposal did not contain detailed documentation describing its methodology for calculating ROI as required by Section 6.04. RFP, p. 45. Even as to the historical data, Mountain Pacific did not disclose the methodology it used to generate that data. The only explanation it provided was that "the ROI is calculated based on cost savings minus contract cost." Id. In fact, what Mountain Pacific appears to have been describing, based on that statement, is a net savings calculation and not a ROI calculation.

DHSS obviously required the documentation mandated in Section 6.04 in order to determine if a proposer's ROI methodology was robust and valid. If the methodology is not described, DHSS is left in the position of being unable to determine the value of the program as related to costs incurred. This is a critical consideration in evaluating proposers. If the cost savings methodology is not provided, then DHSS cannot adequately analyze costs in comparison to the results realized from the service. This could result in less value to the State and inadequate justification for the services provided by the proposer. If a proposer, and ultimately DHSS, cannot describe the cost savings methodology employed, neither can they adequately explain or justify to legislators, the Medicaid agency and the Centers for Medicare & Medicaid Services (CMS) the true impact of these services on utilization control as required of all Medicaid agencies by 42 C.F.R. § 456.3.

9. Mountain Pacific's Proposal Should Have Been Determined to be Nonresponsive Because it Failed to Document that its Personnel Will Hold the Requisite Licensure.

Section 2.12 of the RFP requires proposers and their personnel to hold "any necessary applicable professional licenses required by Alaska Statute" at the time proposals are opened. RFP, p. 15. See also RFP § 5.01, p. 29 ("All work . . . must be performed by appropriately credentialed staff. . ..").

Mountain Pacific failed to satisfy that requirement in at least two ways. First, it has not represented that its nurse case managers will be licensed in Alaska, although it has stated that they will be based in Alaska. Mountain Pacific Proposal, p. 40. The Nurse Case Manager position description included in its proposal, which Mountain Pacific submitted in lieu of identification of those key personnel, does not specifically require that those persons must be licensed in Alaska. Id., Attachment J. Case management activities are considered to constitute the practice of registered nursing in Alaska when performed by a registered nurse and require state licensure. See Alaska Stat. § 8.68.410(9).

In addition, Mountain Pacific identified Sharon Stiassny as its case management Alaska office director. Id., Attachment H. However, while Ms. Stiassny is represented to hold a masters degree in social work, her resume does not reflect that she possesses a social work license or a case management certification. Id., Attachment I. In addition, her name does not appear on the Alaska Division of Occupational Licensing online database which lists licensed social workers. Ms. Stiassny's direct supervision of case management activities without appropriate licensure would be inconsistent with Alaska state law. Alaska Stat. § 8.95.990(7) ("counseling of a nonmedical nature to assist in the treatment of mental and emotional conditions of individuals, families, and groups").

10. Mountain Pacific's Proposal Should Have Been Determined to be Nonresponsive Because it Failed to Provide References from Three Different Clients for the Activities Proposed under Lots 1, 2 and 3.

Paragraph 5 of Section 6.08 of the RFP required proposers to "provide a minimum of three client/business references to which the Offeror has provided the activities being proposed during the past five years." RFP, p. 44. The clear import of that requirement was that references were to be provided from three different clients for all of the activities

being proposed.

First, Mountain Pacific failed to meet that requirement because while it provided references with respect to three different contracts, two of those contracts were with the same entity, the Montana Department of Public and Human Services. Mountain Pacific Proposal, p. 11. Thus, Mountain Pacific only provided references for two clients and failed to satisfy this requirement. In addition, the other reference Mountain Pacific provided was for a contract on which it was a sub-contractor, not the primary contractor to the agency. Id., 12.

Second, from the descriptions of services provided in its proposal, it is clear that Mountain Pacific did not provide case management services to two of its three references; the Senior and Long Term Care Division of the Montana Department of Public and Human Services or to Health Services Advisory Group. Thus, it clearly failed to provide three references as to its organizational experience in case management, one of the important "activities being proposed" in its Lot 1 proposal.

11. DHSS Failed to Evaluate Offeror's System Capabilities, Section 7.03, as to Lots 2 and 3 in a Rational Manner.

A review of the scoring sheets for Offeror's System Capabilities, Section 7.03, as to Lots 2 and 3, shows an unusual coincidence that virtually all of the evaluators gave exactly the same scores to Qualis as to Mountain Pacific - five out of a possible ten points. On some of the scoring sheets, the evaluation committee members indicated N/A on some of the questions in that section. On others, the evaluation committee members wrote comments and then crossed out their comments and wrote N/A. Unlike that pattern, the scoring by the evaluation committee members of Qualis and Mountain Pacific was not identical for System Capabilities, Section 7.03, on Lot 1. The oddity of that coincidence is highlighted by the fact that even though Qualis proposed the same system for Lots 2 & 3 as it did for Lot 1, the evaluators' scoring of Qualis on this element differed as between Lot 1, on the one hand, and Lots 2 & 3, on the other hand.

Those coincidences strongly suggest that the evaluators awarded points on this element as to Lots 2 and 3 based on factors other than those set out in the RFP or that additional instructions were given to the evaluation committee members on how to score this section resulting in identical scores for both proposers. In either case, such actions would be improper. It is a cardinal principle of public procurement law that an agency