may only evaluate a proposer on the basis of evaluation criteria clearly disclosed in a solicitation. See, e.g., Keco Indus., Inc. v. United States, 492 F.2d 1200, 1203-04 ((Ct. Cl. 1974) (failure to follow stated process violates law); UNICCO Gov't Servs., Inc., B-277658 (November 7, 1997); Appeal of Bachner Co., Inc., No. 02.06/.07 (Dept. of Admin. Oct. 9, 2002); 2 A.A.C. § 12.260(b).

> [contracting officials] do not have the discretion to announce in the solicitation that they will use one evaluation plan, and then follow another; once offerors are informed of the criteria against which their proposals will be evaluated, the agency must adhere to those criteria in evaluating proposals and making its award decision, or inform all offerors of any significant changes made in the evaluation scheme.

MCR Fed., Inc., B-280969 (December 14, 1998).

If DHSS found that the scoring scheme it had adopted for System Capabilities, Section 7.03, as to Lots 2 and 3 contained a latent ambiguity or was otherwise inappropriate, the correct course of action would have been for it to issue an amendment prior to bid submittal revising that scheme. It would be totally inappropriate for it to modify that scheme during the course of evaluations without any prior notice to proposers. At this juncture, the only available option is for DHSS to resolicit Lots 2 and 3 with a revised scoring plan which is fully disclosed in advance to all proposers.

12. Qualis Has Made an Adequate Showing of Prejudice.

To establish prejudice, a protester is not required to show that, but for the alleged error, the protester would have been awarded the contract. Mgmt. HealthCare Prods. & Servs., B-251503.2 (Dec. 15, 1993); Manekin Corp., B-249040 (Oct. 19, 1992). It is enough that the record contain evidence reflecting a reasonable possibility that, but for the agency's actions, the protester would have had a substantial chance of receiving the award. McDonald-Bradley, B-270126 (Feb. 8, 1996). See also Data General Corp. v. Johnson, 78 F.3d 1556, 1562-63 (Fed. Cir. 1996). Qualis has made more than an adequate showing of such prejudice.

E. Request for Documents.

Qualis hereby requests DHSS provide it with the following relevant documents to

the extent they have not been previously provided:

1. All documents that refer or relate to DHSS's decision not to open proposals submitted on Lots 4, 5 and 6 of the RFP, including all documents which record or reflect communications, such as phone records, between DHSS and any proposers (e.g., First Health, Mountain Pacific) which relate to that decision.

As used in this protest, the term "documents" has the same meaning as in Alaska R. Civ. P. 34(a).

F. Remedies Sought.

Qualis specifically requests that DHSS implement the following remedies:

1. Rescind the Notices of Intent to Award issued to Mountain Pacific, terminate any and all contracts with Mountain Pacific pursuant to the RFP, or, if no contracts have been awarded, to refrain from doing so;

2. Award the contracts for Lots 1, 2 and 3 under the RFP to Qualis;

3. Award Qualis its reasonable proposal preparation costs incurred in submitting proposals; and

4. Award Qualis its costs of filing and prosecuting this protest, including reasonable attorneys' fees.

Respectfully submitted,

Davis Wright Tremaine

Robert K. Stewart, Jr.

RKS/rks
Encl. as stated
19887/2/116399.1 (qualis protest letter)

EXHIBIT 1
Page 22 of

QUALIS HEALTH™
advancing healthcare • improving health

10700 Meridian Ave N - Suite 100
PO Box 33400
Seattle, WA 98133
Office: 206.364.9700
Toll Free: 800.949.7536
Fax: 206.368.2419
www.qualishealth.org

February 20, 2007

Mr. Chris L. Carson
Procurement Officer
State of Alaska, Department of Health and Social Services
Division of Financial & Management Services
333 Willoughby Avenue, Suite 760
P.O. box 110650
Juneau, Alaska 99811-0650

Dear Mr. Carson:

Qualis Health is prepared to extend our current and existing contract Quality Improvement Utilization and Case Management contract (#68184) on a month by month basis, as needed, to ensure continuity of services during the pendency of the protest.

Sincerely,

Jonathan R. Sugarman, MD, MPH
President and CEO

EXHIBIT 1
Page 23 of

Exhibit 2
Evaluation of Mountain Pacific's URAC Deficiencies

## URAC Core Standards – Version 2.0

| URAC Core Standard | Mountain-Pacific |
|---|---|
| **Core 3 – Policy and Procedure Maintenance, Review, and Approval**<br>The organization: (a) Maintains and complies with written policies and procedures that govern all aspects of its operations; (b) Maintains a master list of all such policies and procedures; (c) Reviews policies and procedures no less than annually and revises as necessary; and (d) Includes the following on all policies and procedures: (i) Effective dates, review dates, including the date of the most recent revision; and (ii) Identification of approval authority. | This is **NOT ADDRESSED** in Mountain Pacific's proposal |
| **Core 4 – Job Descriptions**<br>The organization has written job descriptions for staff that address: (a) Required education, training, and/or professional experience; (b) Expected professional competencies; (c) Appropriate licensure/certification requirements; and (d) Scope of role and responsibilities. | Mountain Pacific **DOES NOT** meet this standard because the non-clinical staff and medical director job descriptions are not included in its proposal |
| **Core 6 - Credentialing**<br>The organization implements a policy to: (a) Verify the current licensure and credentials of licensed or certified personnel/consultants upon hire, and thereafter no less than every 3 years; (b) Require staff to notify organization in a timely manner of an adverse change in licensure or certification status; and (c) Implement corrective action in response to adverse changes in licensure or certification status. | Mountain Pacific **DOES NOT** meet this standard because this topic is not described in its proposal. Per p.72 of its proposal, it uses "Directory of Board Certified Medical Specialists (ABMS)." It receives this publication annually. URAC requires that a Primary Source Verification be used. ABMS does not meet this requirement. |
| **Core 7 – Staff Training Program**<br>The organization has a training program that includes: (a) Initial orientation and/or training for all staff before assuming assigned roles and responsibilities; (b) Ongoing training, at a minimum annually, to maintain professional competency; (c) Training in URAC Standards as appropriate to job functions; (d) Training in state and regulatory requirements as related to job functions; (e) Conflict of interest; (f) Confidentiality; (g) Delegation oversight, if necessary; and (h) Documentation of all training provided for staff. | This is **NOT ADDRESSED** in Mountain Pacific's proposal. Specifically there is no training on several aspects including 7.a, 7.c, 7.e, and 7.h |
| **Core 11 – Senior Clinical Staff Responsibilities**<br>The senior clinical staff person: (a) Provides guidance for all clinical aspects of program; (b) Is responsible for clinical aspects of program; and (c) Has periodic consultation with practitioners in the field. | Mountain Pacific **DOES NOT** meet this standard because there is no job description or other description of the job duties for this position contained in its proposal |
| **Core 15 – Delegation Review Criteria**<br>The organization establishes and implements criteria and processes for an assessment prior to the delegation of functions. | Unable to assess |
| **Core 16 – Delegation Review**<br>Prior to delegating functions to another entity, the organization: (a) Conducts a review of the potential contractor's policies and procedures and capacity to perform delegated functions; and (b) Outlines and follows criteria and processes for approving contractors. | Unable to assess |
| **Core 17 – Delegation Contracts**<br>The organization enters into written agreements with contractors that: (a) Specify those responsibilities delegated | Unable to assess |



EXHIBIT 1
Page 24 of ____

Exhibit 2
Evaluation of Mountain Pacific's URAC Deficiencies

| URAC Core Standard | Mountain-Pacific |
|---|---|
| to the contractor and those retained by the organization; (b) Require that services be performed in accordance with the organization's requirements and URAC standards; (c) Require notification to the organization of any material change in the contractor's performance of delegated functions; (d) Specify that the organization may conduct surveys of the contractor, as needed; (e) Require that the contractor submit periodic reports to the organization regarding the performance of its delegated responsibilities; (f) Specify recourse and/or sanctions if the contractor does not make corrections to identified problems within a specified period; (g) Specify the circumstances under which activities may be further delegated by the contractor, including any requirements for obtaining permission from the organization before any further delegation; and (h) Specify that, if the contractor further delegates organizational functions, those functions shall be subject to the terms of the written agreement between the contractor and the organization and in accordance with URAC standards. | |
| **Core 18 – Delegation Oversight** The organization implements an oversight mechanism for delegated functions that includes: (a) A periodic review (no less than annually) of the contractor's policies and procedures and documentation of quality activities for related delegated functions; (b) A process to verify (no less than annually) the contractor's compliance with contractual requirements and policies and procedures; and (c) A mechanism to monitor financial incentives to ensure that quality of care or service is not compromised. | Unable to assess |
| **Core 20 – Financial Incentive Policy** If the organization has a system for reimbursement, bonuses, or incentives to staff or health care providers based directly on consumer utilization of health care services, then the organization implements mechanisms addressing how the organization will ensure that consumer health care is not compromised. | Mountain Pacific **DOES NOT** meet this standard because it did not address this topic in its proposal |
| **Core 21 – Communication Practices** The organization follows marketing and communication practices that include: (a) Mechanisms to clearly and accurately communicate information about services to consumer and clients; (b) Safeguards against misrepresentations about the organization's services; (c) A formal process of inter-departmental review of marketing materials before dissemination; and (d) Monitoring of existing materials for accuracy. | Mountain Pacific **DOES NOT** meet this standard because it did not address this topic in its proposal |
| **Core 22 – Consumer Communication Plan** The organization documents and has a mechanism for informing consumers and clients of their rights and responsibilities, including: (a) How to obtain services; and (b) How to submit a complaint or appeal. | Mountain Pacific **DOES NOT** meet this standard because it did address how consumers can submit a complaint in its proposal |
| **Core 23 – Consumer Safety Mechanism** The organization has a mechanism to respond on an urgent basis to situations that pose an immediate threat to the health and safety of consumers. | Mountain Pacific **DOES NOT** meet this standard because it did not address this topic in its proposal |



EXHIBIT 1
Page 25 of