Exhibit 2
Evaluation of Mountain Pacific's URAC Deficiencies

| URAC UM Standard | Mountain-Pacific |
|---|---|
| day period of the circumstances requiring the extension and the date when the plan expects to make a decision; and<br>(iii) If a *patient* fails to submit necessary information to decide the case, the notice of extension must specifically describe the required information, and the *patient* must be given at least 45 calendar days from receipt of notice to respond to the plan request for more information. | |
| **UM 18 – Retrospective Review Timeframes**<br>For *retrospective review*, the *organization* issues a determination:<br>(a) Within 30 calendar days of the receipt of request for a *utilization management* determination.<br>(b) This period may be extended one time by the *organization* for up to 15 calendar days:<br>(i) Provided that the *organization* determines that an extension is necessary because of matters beyond the control of the *organization*; and<br>(ii) Notifies the *patient*, prior to the expiration of the initial 30 calendar day period of the circumstances requiring the extension and the date when the plan expects to make a decision; and (iii) If a *patient* fails to submit necessary information to decide the case, the notice of extension must specifically describe the required information, and the *patient* must be given at least 45 calendar days from receipt of notice to respond to the plan request for more information. | Mountain Pacific **DOES NOT** meet this standard because timeframes for completion are lacking in its proposal |
| **UM 19 – Concurrent Review Timeframes**<br>For *concurrent review*, the *organization* adheres to the following time frames::<br>(a) For reductions or terminations in a previously approved course of treatment, the *organization* issues the determination early enough to allow the patient to request a review and receive a review decision before the reduction or termination occurs: and<br>(b) For requests to extend a current course of treatment, the *organization* issues the determination within:<br>(i) 24 hours of the request for a *utilization management* determination, if it is a *case involving urgent care* and the request for extension was received at least 24 hours before the expiration of the currently certified period or treatments; or<br>(ii) 72 hours of the request for a utilization management determination, if it is a case involving urgent care and the request for extension was received less than 24 hours before the expiration of the currently certified period or treatments. | Mountain Pacific **DOES NOT** meet this standard because timeframes for completion are lacking in its proposal |
| **UM 22 – Written Notice of Non-Certification Decisions & Rationale**<br>For *non-certifications*, the *organization* issues *written notification* of the *noncertification* decision to the *patient* and *attending physician* or other *ordering provider* or *facility rendering service* that includes:<br>(a) The *principal reasons* for the determination not to certify;<br>(b) A statement that the *clinical rationale* used in making the *non-certification* decision will be provided, in writing, upon request; **and**<br>(c) Instructions for:<br>(i) Initiating an *appeal* of the *non-certification;* and<br>(ii) Requesting a *clinical rationale* for the *non-certification.* | Mountain Pacific **DOES NOT** meet this standard because it does not address the 22.c.ii topic in its proposal |
| **UM 23 – Clinical Rationale for Non-Certification Requirements**<br>Upon request from the *patient, attending physician*, or other *ordering provider* or *facility rendering service*, the *organization* provides specific *clinical review criteria* upon which the *non-certification* was based. | Mountain Pacific **DOES NOT** meet this standard because it does not specify how it would respond to requests for |



EXHIBIT 1
Page 31 of ____

Exhibit 2
Evaluation of Mountain Pacific's URAC Deficiencies

| URAC UM Standard | Mountain-Pacific |
|---|---|
| | clinical rationale for non-certifications in its proposal (as required in UM 22.c.ii) |
| **UM 24 – Reversal of Certification Determinations**<br>The *organization* does not reverse a *certification* determination unless it receives new information that is relevant to the *certification* and that was not available at the time of the original *certification*. | Mountain Pacific **DOES NOT** meet this standard because it does not describe its process in its proposal. |
| **UM 26 – Scope of Review Information**<br>The *organization*, when conducting routine *prospective review*, *concurrent review*, or *retrospective review*:<br>(a) Accepts information from any reasonably reliable source that will assist in the *certification* process;<br>(b) Collects only the information necessary to certify the admission, procedure or treatment, length of stay, or frequency or duration of services<br>(c) Does not routinely require hospitals, physicians, and other *providers* to numerically code diagnoses or procedures to be considered for *certification*, but may request such codes, if available;<br>(d) Does not routinely request copies of all medical records on all *patients* reviewed;<br>(e) Requires only the section(s) of the medical record necessary in that specific case to certify medical necessity or appropriateness of the admission or extension of stay, frequency or duration of service, or length of anticipated inability to return to work; **and**<br>(f) Administers a process to share all clinical and demographic information on individual *patients* among its various clinical and administrative departments that have a need to know, to avoid duplicate requests for information from enrollees or *providers*. | Mountain Pacific **DOES NOT** meet this standard because it does not describe its process in its proposal. |
| **UM 29 – Lack of Information Policy and Procedure**<br>The *organization* implements policies and procedures to address situations in which it has insufficient information to conduct a review. Such policies and procedures provide for:<br>(a) Procedural time frames that are appropriate to the clinical circumstances of the review (i.e., *prospective*, *concurrent*, *retrospective reviews*);<br>(b) Resolution of cases in which the necessary information is not provided to the *organization* within specified time frames; and<br>(c) Processes by which the *organization* issues an administrative non-certification due to lack of information. | Mountain Pacific **DOES NOT** meet this standard because it does not specify timeframes on (a) or (b), and it does not specify a process on (c) in its proposal |
| **UM 30 - Non-Certification Appeals Process**<br>The *organization* maintains a formal process to consider *appeals* of *non-certifications* that includes:<br>(a) The availability of *standard appeal* for non-urgent cases and *expedited appeal* for *cases involving urgent care*; and<br>(b) Written *appeals* policies and procedures that:<br>(i) Clearly describe the *appeal* process, including the right to *appeal* of the *patient*, *provider*, or *facility rendering service*;<br>(ii) Provide for explicit time frames for each stage of the *appeal* resolution process; **and**<br>(iii) Are available, upon request, to any *patient*, *provider*, *or facility rendering service*. | Mountain Pacific **DOES NOT** meet this standard because there are no explicit timeframes, as required in (b)(ii), described in the appeals language in its proposal. |
| **UM 31 – Appeals Process**<br>As part of the *appeals* process:<br>(a) The *organization* provides the *patient*, *provider*, or *facility rendering* | Mountain Pacific **DOES NOT** meet this standard because it does not describe the |



EXHIBIT 1
Page 32 of

Exhibit 2
Evaluation of Mountain Pacific's URAC Deficiencies

| URAC UM Standard | Mountain-Pacific |
|---|---|
| *service* the opportunity to submit written comments, documents, records, and other information relating to the case, and<br>(b) Takes all such information into account during the *appeals* process without regard to whether such information was submitted or considered in the initial consideration of the case, and<br>(c) In instance of a first level *appeal*, the organization implements the decision of the first level clinical *appeal* if it overturns the initial denial. | process for (a) in its proposal |
| **UM 32 – Appeal Peer Reviewer Qualifications**<br>*Appeals considerations* are conducted by *health professionals* who:<br>(a) Are *clinical peers*;<br>(b) Hold an active, unrestricted *license* to practice medicine or a health profession;<br>(c) Are *board-certified* (if applicable) by:<br>(i) A specialty board approved by *the American Board of Medical Specialties* (doctors of medicine); **or**<br>(ii) The *Advisory Board of Osteopathic Specialists* from the major areas of clinical services (doctors of osteopathic medicine);<br>(d) Are in the same profession and in a similar specialty as typically manages the medical condition, procedure, or treatment as mutually deemed appropriate; **and**<br>(e) Are neither the individual who made the original *non-certification*, nor the subordinate of such an individual | Mountain Pacific **DOES NOT** meet this standard because it does not specify how it meet (e) in its proposal |
| **UM 33 – Expedited Appeals Process Timeframe**<br>*Expedited appeals* are completed, with verbal notification of determination within 72 hours of the request followed by a written confirmation of the notification within 3 calendar days. | Mountain Pacific **DOES NOT** meet on this due to lacking timeframes in their RFP response. |
| **UM 34 – Standard Appeals Process Timeframe**<br>*Standard appeals* are completed, and *written notification* of the *appeal* decision issued, within 30 calendar days of the receipt of the request for *appeal*. | Mountain Pacific **DOES NOT** meet this standard because timeframes for completion are lacking in its proposal |
| **UM 36 – Appeal Record Documentation**<br>The *organization* maintains records for each *appeal* that includes:<br>(a) The name of the *patient, provider,* and/or *facility rendering service*;<br>(b) Copies of all correspondence from the *patient, provider,* or *facility rendering service* and the *organization* regarding the *appeal*;<br>(c) Dates of *appeal* reviews, documentation of actions taken, and final resolution;<br>(d) Minutes or transcripts of *appeal* proceedings (if any); and<br>(e) Name and credentials of the clinical peer that meets the qualifications in Standard UM 14 | Mountain Pacific **DOES NOT** meet this standard because it does not indicate how records are maintained for each appeal |

Exhibit 2
Evaluation of Mountain Pacific's URAC Deficiencies

**URAC Case Management (CM) Standards – Version 3.0**

| URAC CM Standard | Mountain-Pacific Demonstration of Compliance |
|---|---|
| **CM 1 – Case Management Program Description** The case management program's description and/or written policies and procedures include a definition of case management consistent with these Standards. | Mountain Pacific DOES NOT meet this standard because this topic it is not described in its proposal |
| **CM 2 – Case Manager Case Load** The organization: (a) Establishes guidelines for reasonable case manager caseload with supporting rationale based on factors such as severity of cases, complexity of cases, role requirements of case managers, and other relevant factors; and (b) Applies a process to monitor caseload based on guidelines developed by the organization; and (c) Consistent with the guidelines established in CM 2 (a), employs/contracts with an adequate number of case management personnel to provide services to the consumers of the program. | Mountain Pacific DOES NOT meet this standard because this topic it is not described in its proposal |
| **CM 3 – Physician Consultation** The organization has a policy and procedure for case management staff to consult with or seek advice from licensed physicians with expertise appropriate to the types of services being managed. | Mountain Pacific DOES NOT meet this standard because it does not describe its policies, procedures and processes for this function in its proposal |
| **CM 4 – Case Manager Supervisor Qualifications** Individuals who directly supervise case management practices: (a) Have at least one of the following qualifications: (i) A bachelors (or higher) degree in a health-related field and licensure as a health professional (where such licensure is available); or (ii) Certification as a case manager; or (iii) Professional certification in a clinical specialty and at least three (3) years experience as a case manager; and (b) If they have directly supervised the case management process for three or more years, hold a certification as a case manager. | Mountain Pacific DOES NOT meet this standard because its manager of case management, Sharon Stiassny, who directly manages the case managers in Alaska, does not appear to possess a social work license nor a case management certification, nor be on a track to receive such CM certification. No license status for Ms. Stiassny is reported in Mountain Pacific's proposal, and her name does not appear on the Alaska Division of Occupational Licensing online database which lists licensed social workers. This could be a violation of state licensing law for social workers |
| **CM 7 – Case Management Knowledge Domains** The organization requires case managers to be educated in current principles, procedures, and knowledge domains of case management based on nationally recognized standards of case management. Such education includes: (a) The organization's case management process, policies and procedures; state-specific requirements; professional roles and resources; and requirements specific to the clinical or payer populations being served; (b) URAC's current Case Management Standards; and (c) Relevant professional education on at least an | Mountain Pacific DOES NOT meet this standard because there is no description of its education and training of case managers as required by (a) (b) in its proposal |



EXHIBIT 1
Page 34 of

Exhibit 2
Evaluation of Mountain Pacific's URAC Deficiencies

| URAC CM Standard | Mountain-Pacific Demonstration of Compliance |
|---|---|
| annual basis. | |
| **CM 8 – Case Manager Professional Development** The organization encourages professional development among case managers through: (a) Providing access to the experience/knowledge needed to apply for professional certification; (b) Education regarding the quality management program; (c) Membership in or attendance at meetings of relevant professional organizations; and (d) Education in cultural diversity appropriate to the populations served. | Mountain Pacific **DOES NOT** meet this standard because it does not address cultural diversity as required in (d) and that is critical for the Alaska population which is 30% native American |
| **CM 9 – Case Review** The organization conducts reviews of the case management process through case review by the case management program director, advisor, or other supervisor to: (a) Promote achievement of case management goals as established in consumer-specific case management plans; and (b) Report the findings to the quality management committee (See Core Standards, Quality Improvement/Management Section). | Mountain Pacific **DOES NOT** meet this standard because this topic is not addressed in its proposal |
| **CM 10 – Consumer and Case Manager Protection** The organization establishes and implements policies and procedures to protect the welfare and safety of consumers and case managers. Such policies and procedures address: (a) For consumer protection: (i) The Americans with Disabilities Act, workers' compensation and other laws protecting the rights of consumers; (ii) Identification and reporting of abuse; (iii) Informed consent for services, advance medical directives, and power of attorney for health care; (iv) Health benefits and benefits administration; (v) Seeking resources for resolution of legal questions; and (vi) Prevention of suicide; (b) For consumer and case manager protection: (i) Prevention of violence; (ii) Prevention of infectious diseases; and (iii) Reporting incidents of unusual occurrences. | Mountain Pacific **DOES NOT** meet this standard because this topic is not addressed in its proposal |
| **CM 11 – Consumer Rights** The organization establishes and implements policies to promote the autonomy of consumers and support consumer and family decision-making. Such policies address: (a) Education of consumers on their rights; (b) The process by which consumers are informed of choices regarding services; (c) The right of consumers to have input into the case management plan; (d) The right of consumers to refuse treatment or services, including case management services and the implications of such refusal relating to benefits eligibility and/or health outcomes; (e) The use of end of life and advance care directives by the organization, as applicable; (f) The right of consumers to obtain information regarding the organization's criteria for case closure; (g) The right of consumers to receive notification and a rationale when case management services are changed or terminated; and (h) Alternative approaches when the consumer and/or family are unable to fully participate in the assessment phase. | Mountain Pacific **DOES NOT** meet this standard because this topic is not addressed in its proposal. Mountain Pacific's experience is restricted to involuntary CM programs |
| **CM 12 – Case Manager Ethics Training** The organization establishes, implements, and educates case management personnel, no less than annually, on policies and procedures supporting the ethical framework for case management practice including: (a) Advocacy for consumer needs; (b) Guidance for professional relationships with consumers; (c) Prohibition of relationships that could compromise professional objectivity; (d) | Mountain Pacific **DOES NOT** meet this standard because this topic is not addressed in its proposal |



EXHIBIT 1
Page 35 of