Exhibit 2
Evaluation of Mountain Pacific's URAC Deficiencies

| URAC CM Standard | Mountain-Pacific Demonstration of Compliance |
|---|---|
| Resolution of conflicts of interest between the case manager, consumer, third party payer, provider or other entity; (e) Business, financial, and marketing practices; (f) Resolution of perceived lapses in quality of care resulting from actions by consumers, payers, case managers, providers, organizations or other entities affecting the case management process; (g) Policies that address case managers' handling of consumer needs when such needs extend beyond the scope of the organization's services; (h) Prohibition of discrimination against a consumer or group of consumers by the case manager or organization; and (i) Information on how policies regarding the ethical framework will be shared with staff, contractors, clients, and consumers. | |
| **CM 13 – Vendor Policy and Procedures** The organization establishes and implements policies and procedures addressing its obligations to assist consumers in selecting providers and to monitor vendors to which case managers may make referrals. | Mountain Pacific **DOES NOT** meet this standard because this topic is not addressed in its proposal |
| **CM 15 – Case Management Disclosure** The organization establishes and implements a policy that requires case managers to disclose the following information to consumers at the onset of the case management relationship: (a) The nature of the case management relationship, particularly when a third party payer is involved; (b) The circumstances in which information obtained in the case management relationship will be disclosed to third parties; (c) How and when consumers are to be provided with written notification of case management actions and recommendations; (d) The availability of a complaint process and the method by which to access it; and (e) If requested, a description of the rationale for selecting the consumer for case management services. | Mountain Pacific **DOES NOT** meet this standard because this topic is not addressed in its proposal |
| **CM 16 – Case Management Consent** The organization establishes and implements a policy to obtain consumers' consent for participation in case management activities that: (a) Requires documentation of oral consent; (b) Requires at minimum an attempt to obtain written consent; (c) Indicates the time frame in which the consent(s) must be obtained; and (d) Indicates the duration of validity of the consent(s). | Mountain Pacific **DOES NOT** meet this standard because timeframes for consent as required in (b), (c) and (d) are not described in its proposal |
| **CM 17 – Case Management Tools** The organization establishes and makes available appropriate tools and information that: (a) Enable case managers to collect information necessary to carry out the case management process; (b) Can be accessed by the case manager and others involved in the case management process; and (c) Can be used in the quality management process. | Mountain Pacific **DOES NOT** meet this standard because there is no CM system that is illustrated in its proposal and definitely **NO** connection to their QM program described in its proposal |
| **CM 19 – Case Management Plan** The organization establishes and implements a policy to document for every consumer a case management plan specific to the individual consumer that: (a) Is developed by a case manager in collaboration with the consumer and members of the health care team; and (b) Identifies: (i) Short term goals; (ii) Long term goals; (iii) Time frames for re-evaluation (follow-up) and response to services; (iv) Resources to be utilized; and (v) Collaborative approaches to be used (including family and physician participation). | Mountain Pacific **DOES NOT** meet this standard because (iii) and (iv) are not addressed in its proposal |
| **CM 20 – Case Management Dispute Resolution** | Mountain Pacific **DOES NOT** |



EXHIBIT 1
Page 36 of

Exhibit 2
Evaluation of Mountain Pacific's URAC Deficiencies

| URAC CM Standard | Mountain-Pacific Demonstration of Compliance |
|---|---|
| The organization establishes and implements a policy for resolving disagreements within the organization regarding consumer care options. | meet this standard because this topic is not addressed in its proposal |
| **CM 21 – Case Management Discharge Criteria** The organization establishes and implements criteria for discharge of consumers or termination of case management services and documents discharge date from case management including: (a) Criteria for discharge of consumers or termination of CM services that are maintained by the organization; (b) The organization's case managers are aware of the organization's criteria; and (c) Documentation of the rationale for the discharge of consumers or termination of CM services and the date of discharge from case management; | Mountain Pacific **DOES NOT** meet this standard because (a), (b) and (c) are not addressed in its proposal |
| **CM 22 – Onsite Case Management** If the organization provides field and/or on-site case management services, the organization requires case managers to: (a) Carry a picture ID with full name and the name of the organization or company for on-site activities; (b) Schedule on-site activities at least one business day in advance, unless otherwise agreed; and (c) Follow reasonable hospital or facility procedures, including checking in with designated hospital or facility personnel. | Mountain Pacific **DOES NOT** meet this standard because it does not describe its process for conducting on-site case management in its proposal |
| **CM 23 – Case Management Complaints** The organization establishes and implements policies and procedures through which consumers and providers may submit a complaint that include: (a) A process to determine if the complaint relates to an issue within the scope of case management responsibilities of the organization; and (b) A process to refer complaints that are outside the scope of the case management responsibilities of the organization to the appropriate entity. | Mountain Pacific **DOES NOT** meet this standard because this topic is not addressed in its proposal |



EXHIBIT 1
Page 37 of

# STATE OF ALASKA

*SARAH PALIN, GOVERNOR*

**DEPT. OF HEALTH AND SOCIAL SERVICES**
**FINANCE AND MANAGEMENT SERVICES**
*Grants and Contracts Support Team*

*P.O. Box 110650*
*Juneau, AK 99811-0650*
*Phone: (907) 465-5424*
*Fax: (907) 463-3153*

March 2, 2007

To Be Faxed

Robert K. Stewart, JR.
Attorney At Law
Davis Wright Tremaine
701 West Eighth Avenue
Suite 800
Anchorage, Alaska 99501-3408

Dear Mr. Stewart,

As legal representative for Qualis Health, this is to notify you that the Department of Health and Social Services has received approval from the Commissioner of Administrative Services, under Sec. 36.30.580 to extend the fifteen (15) day protest response period an additional thirty (30) days. This approval will extend the Department of Health and Social Services response date from March 7, 2007 to April 6, 2007.

Sincerely,

Chris L. Carson,
Procurement Officer

EXHIBIT 2
Page 1 of 1

# NOTICE OF CANCELLATION

Department of Health and Social Services
Finance Management Services
Grants and Contracts Support Team
Division of Health Care Services

Phone: (907) 465-3469
Fax: (907) 465-8678

**THIS IS NOT AN ORDER** **DATE ISSUED: April 6, 2007**

**RFP NO.:** 2007-0600-6530 **RFP DEADLINE or ITB OPENING DATE: N/A**

**TITLE: Quality Improvement Organization & Authorizing Entity Services**

**PROCUREMENT OFFICER:** Chris L. Carson

**SIGNATURE:** Chris L. Carson

This is notice of the State's cancellation of the solicitation identified above. A bidder or offeror who wishes to protest this cancellation must file the protest within ten calendar days following the date this notice is issued. If the tenth day falls on a weekend or holiday, the last day of the protest period is the first working day following the tenth day.

***EXPLANATION*** *RFP 2007-0600-6530 under Compliance with HIPAA (1), page 36. "The Offeror must supply proof that they are accepting, processing and transmitting electronic request and response for certification (278 transactions) comply with a HIPAA compliant format." The department acknowledges that this requirement was overly restrictive by requiring Offerors to have already performed the follow task, which is a new HIPAA compliant format.*

*Per 2 AAC 12.860, after the opening of bids or after notice of intent to award but before award, all bids may be rejected in whole or in part by the Chief Procurement Officer or the head of a purchasing agency issuing the solicitation.*

*Reasons for rejection include the following: (1) ambiguous or otherwise inadequate specification were part of the solicitation and (2) the award is not in the best interest of the state. Based on this finding, the Department of Health and Social Services, hereby cancels the solicitation of RFP 2007-0600-6530.*

EXHIBIT 3
Page 1 of 1