# In the United States Court of Federal Claims

No. 07-155C
(Filed Under Seal: October 25, 2007)
(Reissued: October 31, 2007)

| | |
|---|---|
| **GEO-SEIS HELICOPTERS, INC.,**<br>Plaintiff,<br>v.<br>**UNITED STATES,**<br>Defendant, and<br>**PRESIDENTIAL AIRWAYS, INC.,**<br>Intervening Defendant. | Post-award bid protest; attorneys' fees; Equal Access to Justice Act, 28 U.S.C. § 2412(d); bid preparation and proposal costs; 28 U.S.C. § 1491(b)(2) |

Robert K. Stewart, Jr., Davis Wright Tremaine LLP, Anchorage, AK, for plaintiff.

Carrie A. Dunsmore and Brian S. Smith, Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With them on the briefs were Peter D. Keisler, Assistant Attorney General, Civil Division, Jeanne E. Davidson, Director, and Mark Melnick, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**[1]

LETTOW, Judge.

In this post-award bid protest, pending before the court are a motion by plaintiff, Geo-Seis Helicopters, Inc. ("Geo-Seis") for an award of attorneys' fees pursuant to the Equal Access

[1]Because this opinion and order might have contained "confidential or proprietary information" within the meaning of the Rules of the Court of Federal Claims ("RCFC") Appendix C, ¶ 4, and the protective order issued in this case, it was initially filed under seal. The parties were requested to submit any proposed redactions by October 30, 2007. No redactions were deemed necessary.

to Justice Act ("EAJA"), 28 U.S.C. § 2412, and an application for an award of bid preparation and proposal costs pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(2), and the court's Judgment and Opinion and Order entered July 13, 2007. *See Geo-Seis Helicopters, Inc. v. United States*, 77 Fed. Cl. 633 (2007). Geo-Seis claims that it qualifies for an award of $39,960.80 under the EAJA for attorneys' fees and costs. The government resists such an award based upon the contention that its position in the underlying litigation was substantially justified. Respecting bid preparation and proposal costs, the government does not contest an award to Geo-Seis of $61,954.46.

## BACKGROUND

This case was initiated on March 9, 2007, when Geo-Seis filed a complaint protesting against the Military Sealift Command's award to Presidential Airways, Inc. ("Presidential") of a contract for the use of three helicopter detachments to provide vertical replenishment services in support of the U.S. Navy's 5th and 7th Fleets operating in the Pacific and Indian Oceans and adjacent areas. *Geo-Seis*, 77 Fed. Cl. at 634-35. Among other things, Geo-Seis contended that the Sealift Command's Contracting Officer violated the "late is late" rule in the Federal Acquisition Regulation ("FAR"), 48 C.F.R. § 52.215-1(c)(3)(ii)(A), by improperly issuing two post-deadline amendments to the solicitation, each allowing untimely submissions by Presidential of "final" proposed revisions to its offer. *Geo-Seis*, 77 Fed. Cl. at 635.

Geo-Seis filed a bid protest with the Government Accountability Office ("GAO") on November 27, 2006, but that protest was denied by GAO on March 5, 2007. *Matter of Geo-Seis Helicopters, Inc.*, Nos. B-299175, B-299175.2 (G.A.O. Mar. 5, 2007). Geo-Seis then filed its complaint in this court.

On July 13, 2007, after hearing argument on motions and holding a trial to take testimony regarding factual issues associated with equitable relief, this court held that the Military Sealift Command contravened the FAR by issuing the post-deadline amendments to the solicitation that allowed Presidential's untimely revisions to its offer. *Geo-Seis*, 77 Fed. Cl. at 645. Concluding that Geo-Seis had been prejudiced as a result of this action, *id.* at 646, the court set aside and enjoined the Sealift Command's contractual award to Presidential insofar as the third detachment was concerned but not respecting the first two detachments. *Id.* at 651. In addition, the court awarded Geo-Seis its reasonable costs incurred in bid preparation and proposal, specifying a schedule for submission of those costs and for the government's response. *Id.*

Geo-Seis filed a motion for attorneys' fees under EAJA on August 10, 2007 and an application for award of proposal costs on September 7, 2007. The motion and application have been fully briefed and are ready for disposition.

## ANALYSIS

### A. Request for Fees and Expenses under the Equal Access to Justice Act

*1. EAJA criteria.*

Under the EAJA, an award of reasonable attorneys' fees may be made to a qualifying party who prevails in an action by or against the United States, provided that certain criteria are met. 28 U.S.C. § 2412(d)(1)(A).[2] Eligibility for such an award requires that: (1) the claimant be a "prevailing party;" (2) the government's position was not "substantially justified;" (3) no "special circumstances make an award unjust;" and (4) any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement. *Id.* § 2412(d)(1)(A), (B); *see Commissioner, INS v. Jean*, 496 U.S. 154, 158 (1990); *Loomis v. United States*, 74 Fed. Cl. 350, 353 (2006); *Lion Raisins, Inc. v. United States*, 57 Fed. Cl. 505 (2003); *see also Knowledge Connections, Inc. v. United States*, 76 Fed. Cl. 612, 614-15 (2007).

Geo-Seis avers that it fulfills all of the EAJA requirements, Pl.'s Mem. in Support of Mot. for Att'ys' Fees ("Pl.'s Mem.") at 2-5, and the government contests only the "substantial justification" element. Def.'s Opp'n to Pl.'s Application for Att'y's Fees ("Def.'s Opp'n") at 1-2. First, Geo-Seis submits that it satisfies the statutory definition of a qualifying "party" as a corporation or other organization with a net worth of less than $7 million and 500 or fewer employees. Pl.'s Mem. at 3-4 (citing 28 U.S.C. § 2412(d)(2)(B)). Measured as of March 9, 2007, the date the action was filed, *see* 28 U.S.C. § 2412(d)(2)(B), Geo-Seis alleges that it had a net worth of negative $137,010.17 and nine employees. Pl.'s Mem. at 4 (citing attached Affidavit of William T. Browder, President of Geo-Seis, Exs. A, B, ¶¶ b, c; attached Affidavit of Dennis Johnson, C.P.A., ¶ 3). Additionally, Geo-Seis avers it was a "prevailing party" because it succeeded on a "significant issue which achieves some of the benefits sought by the suit," *Owen v. United States*, 861 F.2d 1273, 1274 (Fed. Cir. 1988), having established that the Military Sealift Command's decision to accept Presidential's late proposals contravened the "late is late" rule and having obtained a measure of injunctive relief. Pl.'s Mem. at 4; *see Geo-Seis*, 77 Fed. Cl. at 645, 650-51. Second, the government does not allege that "special circumstances" in this case make an award of attorneys' fees unjust. Def.'s Opp'n at 1-2. Third, Geo-Seis submitted its

---

[2]The EAJA provides that:

> [A] court shall award to a prevailing party[,] other than the United States[,] fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

application within 30 days of the date of final judgment and included the statutorily required statement of detailed costs, time expended, and rates. *See* Pl.'s Mem. at 3; *see also* 28 U.S.C. § 2412(d)(1)(B). Accordingly, "substantial justification" is the only matter at issue.

*2. "Substantially justified."*

The burden of establishing substantial justification rests upon the government. *See White v. Nicholson*, 412 F.3d 1314, 1315 (Fed. Cir. 2005); *Hillensbeck v. United States*, 74 Fed. Cl. 477, 479-80 (2006); *Lion Raisins*, 57 Fed. Cl. at 512. In *Pierce v. Underwood*, 487 U.S. 552, 565 (1998), the Supreme Court described substantial justification as meaning "not 'justified to a high degree,' but rather 'justified in substance or in the main'– that is, justified to a degree that could satisfy a reasonable person." In determining substantial justification, the court must "look at the entirety of the government's conduct [both prior to and during litigation] and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991); *see also Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995) ("[T]he term 'position of the United States' [in the EAJA] refers to the government's position throughout the dispute, including not only its litigating position but also the agency's administrative position.").

The key inquiry is "not what the law now is, but what the government was substantially justified in believing it to have been." *Loomis*, 74 Fed. Cl. at 355 (quoting *Underwood*, 487 U.S. at 561). The government's position may therefore be found to be substantially justified even though the court previously overturned the government's actions. *Id.*; *see also Scarborough v. Principi*, 541 U.S. 401, 415 (2004) ("Congress did not . . . want the 'substantially justified' standard to 'be read to raise a presumption that the [g]overnment position was not substantially justified simply because it lost the case.'"); *RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999) ("Although INS had lost the underlying action, that outcome does not alone show that its position had no substantial justification."). Of course, "[t]o be 'substantially justified' means . . . more than merely undeserving of sanctions for frivolousness." *Underwood*, 487 U.S. at 566.

The government argues that its position in the underlying litigation was justified because there was "significant GAO precedent" supporting the Contracting Officer's issuance of Solicitation Amendments 9 and 12 to extend the closing dates for Presidential's proposal revisions *nunc pro tunc*. Def.'s Opp'n at 4 (citing *Micromass, Inc.*, B-278869, Mar. 24, 1998, 98-1 CPD ¶ 93; *Ivey Mech. Co.*, Comp. Gen. Dec. B-272764, 96-2 CPD ¶ 83, Aug. 23, 1996; *Fort Biscuit Co.*, B-247319, May 12, 1992, 92-1 CPD ¶ 440; *Institute for Advanced Safety Studies-Recon.*, B-221330.2, July 25, 1986, 86-2 CPD ¶ 110). The government posits that its reliance on these GAO opinions "was reasonable and substantially justified" because the Contracting Officer in the instant case was "faced with circumstances essentially the same" as those existing in the GAO cases and issued the amendments to enhance competition, consistent with those decisions. *Id.* The government also puts forward GAO's decision in *Geo-Seis Helicopters, Inc.*, B-299175, B-299175.2, Mar. 5, 2007, as a basis for support. The government

argues that, having prevailed before GAO, '"the [g]overnment's defense of a case arising from an administrative decision is reasonable where it is not clear that the administrative decision was erroneous."' Def.'s Opp'n at 4-5 (quoting *Trone v. United States*, 3 Cl. Ct. 690, 693 (1983), and citing *Engles v. United States*, 2 Cl. Ct. 166 (1983), and *Stolpe v. United States*, 36 Fed. Cl. 259, 266 (1996)).

The government's reliance on the set of decisions by GAO is problematic. The court specifically disavowed and refused to follow those precedents. *See Geo-Seis*, 77 Fed. Cl. at 645 n.28. More importantly, the government's argument based on the GAO precedents sidesteps the basis for the court's decision on the merits. The court looked directly to the provisions of the FAR that governed the procurement and held that "[t]he plain language of FAR § 52.215-1(c)(3)(ii)(A) precluded the Sealift Command's consideration of Presidential's revised proposals." *Geo-Seis*, 77 Fed. Cl. at 645.[3] After examining the regulatory history of revisions made to the FAR in 1997, *id.* at 642-45, the court concluded that those revisions expressly rejected the position taken by the Contracting Officer in the challenged procurement, *i.e.*, that she could issue a post-deadline amendment to the solicitation allowing a late proposal where doing so was "in the best interest of the [g]overnment." *Id.* at 637 (quoting AR 342 (Mem. to file from Stangler and Kimm (Mar. 22, 2006))). Proposed revisions to the FAR in 1996 would have allowed just that sort of discretion on the part of a contracting officer, *id.* at 642 (citing and quoting *Federal Acquisition Regulation; Part 15 Rewrite–Phase I*, 61 Fed. Reg. 48,380, 48,380-81 (Sept. 12, 1996)), but those proposed revisions were not adopted on the ground that they gave too much discretion to a contracting officer. *Id.* at 643 (citing and quoting *Federal Acquisition Regulation; Part 15 Rewrite; Contracting by Negotiation and Competitive Range Determination*, 62 Fed. Reg. 51,224 (Sept. 30, 1997)). Thus, the FAR, not GAO and not the court, established the parameters for the Contracting Officer's action. "[T]he FAR Councils [the Civilian Agency Acquisition Council and the Defense Acquisition Regulations Council] specifically addressed th[e attendant] policy issues in the 1997 reconsideration of the FAR, and th[e] court should not undercut that resolution by a contrary decision in this case." *Id.* at 646. In short, even if the line of GAO decisions had some basis prior to the 1997 revisions to the FAR, which itself is a dubious proposition, those decisions could not have retained any vitality after those revisions.[4]

---

[3]FAR § 52.215-1(c)(3)(ii)(A) provides in part that "[a]ny proposal, modification, or revision received at the [g]overnment office designated in the solicitation after the exact time specified for receipt of offers is 'late' and will not be considered unless [specifically stated exceptions apply]."

[4]As the court previously noted, the "GAO precedents reflect 'one of those Comptroller-General-created rules that is not reflected in the FAR.'" *Geo-Seis*, 77 Fed. Cl. at 645 (quoting Ralph C. Nash & John Cibinic, *Late Final Proposal Revisions: The Final Straw!*, Nash & Cibinic Report, Vol. 18, No. 4, ¶ 16 (1997)). The pertinent GAO line of decisions seemingly was premised on an *ipse dixit*, without any basis in law or regulations.

The government's position will not be found to be reasonable or substantially justified when explicit, unambiguous regulations directly contradict that position. *See Hillensbeck*, 74 Fed. Cl. at 481 (government's position conflicted with unambiguous statutory definition and regulations); *Loomis*, 74 Fed. Cl. at 355 (military failed to comply with its own regulations). The government argues that *Hillensbeck* is "readily distinguishable" from the instant case because the agency here did not "rel[y] upon an internal agency interpretation of a statute," but, rather, "[the] M[ilitary] S[ealift] C[ommand] relied upon a line of protest decisions from the GAO . . . [which is] statutorily mandated to render such decisions." Def.'s Opp'n at 6. The proffered distinction is not meaningful. The actions of the Sealift Command's Contracting Officer contravened the FAR, and the GAO precedents could not excuse that deviation from legal requirements. In short, "there is no justification for the government's position when clear, unambiguous regulations directly contradict that position." *Filtration Dev. Co. v. United States*, 63 Fed. Cl. 612, 621 (2005).

Accordingly, the government has not met its burden of proving that its position was substantially justified. Geo-Seis' claim satisfies the requirements of the EAJA.

*3. Amount of award.*

Geo-Seis seeks to recover attorneys' fees and costs for 238.9 hours of work and contends that it is entitled to a cost of living adjustment ("COLA") allowing a recovery in excess of the statutory rate. Pl.'s Mem. at 9-10; *see* 28 U.S.C. § 2412(d)(2)(A)(ii). The EAJA prescribes a $125 per hour cap on attorneys' fees "unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii); *see also KMS Fusion, Inc. v. United States*, 39 Fed. Cl. 593, 603 (1997). To receive a COLA-adjusted award, a plaintiff must "allege[] that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ('CPI')," *California Marine Cleaning, Inc. v. United States*, 43 Fed. Cl. 724, 733 (1999), and supply the court with relevant CPI data. *See Lion Raisins*, 57 Fed. Cl. at 519 (citing *Weaver-Bailey Contractors, Inc. v. United States*, 24 Cl. Ct. 576, 580-81 (1991)). Geo-Seis has satisfied its burden and the government does not contest Geo-Seis' COLA claim or method of calculations.

A base date of March 1996 constitutes the starting point to calculate the COLA. *California Marine*, 43 Fed. Cl. at 733-34. This date is used even though the EAJA was enacted in October 1981, because the Act was amended in March 1996 to increase the hourly statutory rate for attorneys' fees from $75 to $125. *Id.*; *see also Hillensbeck*, 74 Fed. Cl. at 482-83; *Lion Raisins*, 57 Fed. Cl. at 519. The end date for calculating the COLA is the "final date on which legal services were rendered." *Hillensbeck*, 74 Fed. Cl. at 483 (citing *Doty*, 71 F.3d at 387 ("The cost of living adjustment is measured from . . . the date of enactment of the EAJA . . . to the time the services were rendered.") (in turn citing *Chiu*, 948 F.2d at 722)).

Geo-Seis used June 2007 as the end date for calculating the COLA. Pl.'s Mem. at 10. The Federal Circuit has endorsed using "a single mid-point inflation adjustment factor applicable

to services performed before and after that mid-point." *Chiu*, 948 F.2d at 722 n.10. Geo-Seis' attorneys performed services during a relatively short period, from March 2007 to September 2007, making June 2007 an acceptable mid-point from which to calculate the appropriate COLA rate. The government does not contest the use of June 2007 as a COLA end date. Accordingly, based upon an increase in the CPI from 155.70 in March 1996 to 208.35 in June 2007,[5] the proper rate is $167.27.[6] Geo-Seis' attorneys incurred 238.9 hours of work in this case, Pl.'s Mem., Aff. of Robert K. Stewart Jr., allowing for an award of fees under the EAJA of $39,960.80.[7]

**B. Bid Preparation and Proposal Costs**

Under the Tucker Act, as amended by the Administrative Dispute Resolution Act, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), in bid protest cases, "bid preparation and proposal costs" are the only form of monetary relief which this court is empowered to award. 28 U.S.C. § 1491(b)(2). The court previously held that "Geo-Seis is entitled to recover its reasonable costs incurred in bid preparation and proposal" "[i]n light of the Military Sealift Command's contravention of FAR § 52.215-1(c)(3)(ii)(A), and the fact that the Command's award of a contract to Presidential is set aside and enjoined only insofar as the [third] detachment is concerned." *Geo-Seis*, 77 Fed. Cl. at 650.

Bid preparation and proposal costs are defined by regulation as "costs incurred in preparing, submitting, and supporting bids and proposals (whether or not solicited) on potential [g]overnment or non-[g]overnment contracts." FAR § 31.205-18(a). These costs are allowed to the extent that they are both allocable and reasonable. FAR § 31.205-18(c); *see Coflexip & Servs., Inc. v. United States*, 961 F.2d 951, 953 (Fed. Cir. 1992) (discussing provisions identical to those of the current FAR, which then existed in a regulation that has since been repealed). A claimed cost is generally viewed as reasonable "if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business." FAR § 31.201-3(a). A claimed cost is generally viewed as allocable if it "is incurred specifically for the contract." FAR § 31.201-4(a). Expenses compensable as bid preparation costs are those in the nature of researching specifications, reviewing bid forms, examining cost factors, and preparing draft and actual bids. *Lion Raisins v. United States*, 52 Fed. Cl. 629, 631 (2002). Geo-Seis bears the burden of proving that it is entitled to recover its costs. *Id.*

---

[5]*Compare* Bureau of Labor Statistics, United States Department of Labor, Consumer Price Index: March 1996 at Table 1, *available at* ftp://ftp.bls.gov/pub/news.release/History/cpi.041296.news (last visited Oct. 24, 2007), *with* Bureau of Labor Statistics, United States Department of Labor, Consumer Price Index: June 2007 at 1, 6, *available at* http://www.bls.gov/cpi/cpid0706.pdf (last visited Oct. 24, 2007).

[6]$125 x 208.35/155.7 = $167.27.

[7]$167.27 x 238.9 = $39,960.80.

Geo-Seis sought $961,426.51 in bid preparation and proposal costs in its initial application, specifically seeking to recover $58,256.77 in labor costs, $5,427.80 in direct costs, and $897,741.94 for the cost of obtaining a binding helicopter lease option agreement. Pl.'s Application for Award of Proposal Costs ("Pl.'s Application") at 9. The government opposed the costs of both the helicopter lease agreement and labor costs associated with a protest Geo-Seis filed against Presidential Helicopters before the Small Business Administration on October 7, 2006. Def.'s Opp'n to Pl.'s Application for Award of Proposal Costs ("Def.'s Opp'n to Pl.'s Application") at 2. Geo-Seis subsequently withdrew its request for those specific costs and now seeks recovery only for its direct costs and its reduced labor costs, totaling $61,954.46. Pl.'s Reply to Def.'s Opp'n to Pl.'s Application for Award of Proposal Costs ("Pl.'s Reply") at 2. These costs are both unopposed by the government.

*1. Geo-Seis' labor costs.*

Geo-Seis seeks to recover $56,526.66 for the cost of labor related to the preparation and submission of its initial proposal and first and second final proposal revisions. Pl.'s Application at 3; Pl.'s Reply at 2. Although Geo-Seis' officials did not maintain contemporaneous time records, William Browder, Geo-Seis' President, recreated the time that he and Ron Black, Geo-Seis' Director of Operations, worked on Geo-Seis' proposal, relying upon records of communications that Geo-Seis maintained, including e-mail records, the schedule associated with the solicitation, and his personal observations and memory. Pl.'s Application, Affidavit of William T. Browder (Sept. 7, 2007) ("Browder Aff."), ¶ 3. Summaries based on reviewing task records, other documents, and personal observations constitute sufficient documentation to support a claim for proposal costs. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 61 Fed. Cl. 175, 183 (2004).

Mr. Browder calculated the hourly rates for Mr. Black and himself by taking the yearly base wage for each of them, adding 27% for labor burden and fringe benefits, and dividing by 2,064 annual hours worked. Browder Aff., ¶ 5, Ex. B. The labor burden and fringe benefits were comprised of federal and state employment taxes paid by the employer, workers compensation, and health, vision, and dental insurance. *Id.* These items are all allowable labor-cost elements. *See Gentex Corp. v. United States*, 61 Fed. Cl. 49, 54 (2004) ("[B]id proposal costs 'must be based upon *actual rates of compensation*, plus reasonable overhead and fringe benefits, and not market rates.'"); *Lion Raisins*, 52 Fed. Cl. at 634 ("[O]verhead costs, including workers' compensation and fringe benefits, have been awarded as bid preparation costs when shown to be reasonable and allocable to the contract."). As the amounts sought are both reasonable and allocable, Geo-Seis is awarded $56,526.66 for labor costs.

*2. Geo-Seis' direct costs.*

Geo-Seis also claims that it is entitled to recover $5,427.80 in direct costs related to the preparation and submission of its initial proposal and the first and second final proposal revisions. Pl.'s Application at 4. The direct costs sought include travel and other expenses

relating to Mr. Black's attendance at a pre-solicitation conference conducted by the Military Sealift Command in Guam on June 15, 2005, the cost of delivering Geo-Seis' initial proposal to the Sealift Command, FedEx delivery expenses, printing, and the cost of a legal opinion for the Military Sealift Command on the binding nature of the helicopter lease between Geo-Seis and Evergreen Helicopters, Inc. Browder Aff. ¶¶ 6, 7, Ex. C. All of these expenses are of the types typically viewed as recoverable bid preparation and proposal costs. *See, e.g.*, *Lion Raisins*, 52 Fed. Cl. at 631 ("Expenses compensable as bid preparation costs are those in the nature of researching specifications, reviewing bid forms, examining cost factors, and preparing draft and actual bids."). Geo-Seis has fulfilled its burden of showing these costs to be both reasonable and allocable and thus is awarded $5,427.80 in direct costs.

**CONCLUSION**

For the foregoing reasons, Geo-Seis is awarded attorneys' fees under the EAJA of $39,960.80 and bid preparation and proposal costs consisting of $56,526.66 for labor costs and $5,427.80 for direct costs. The clerk shall enter judgment for plaintiff in the total amount of $101,915.26.

Because this decision might have contained "confidential or proprietary information" within the meaning of RCFC Appendix C, ¶ 4, and the protective order issued in this case, it was initially issued under seal. The parties were requested to review the decision and to file any proposed redactions on or before October 30, 2007.

It is so ORDERED.

s/ Charles F. Lettow
Judge